1   SEYFARTH SHAW LLP
    Dana L. Peterson (State Bar No. 178499) (dpeterson@seyfarth.com)
2   Michael J. Burns (State Bar No. 172614) (mburns@seyfarth.com)
    Sharon Ongerth Rossi (State Bar No. 232725) (srossi@seyfarth.com)
3   560 Mission Street, Suite 3100
    San Francisco, California 94105
4   Telephone: (415) 397-2823
    Facsimile: (415) 397-8549
5
    Attorneys for Defendants
6   SERCO GROUP PLC, SERCO, INC., improperly sued as
    SERCO, INC. DE; RAQUEL SANCHEZ;
7   KEITH HULBERT; and MIKE HENRY

8                                                              **MHP**

9                        UNITED STATE DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11  TIMOTHY SANOCKI,                          )   Case No. _____
                                              )
12              Plaintiff,                     )
                                              )   [Removed from San Francisco Superior
13         v.                                  )   Court Case No. CGC-07-465608]
                                              )
14  SERCO GROUP PLC, SERCO, INC. DE,          )   **DECLARATION OF SHARON
    PAUL CARPMAEL, an individual, RAQUEL      )   ONGERTH ROSSI IN SUPPORT OF
15  SANCHEZ, an individual, KEITH HULBERT,    )   NOTICE OF REMOVAL TO FEDERAL
    an individual, MIKE HENRY, an individual, )   COURT UNDER 28 U.S.C.§ 1441(b)
16  and DOES 1-50, inclusive,                 )   (DIVERSITY JURISDICTION)
                                              )
17              Defendants.                    )
                                              )
18  _____)

19         I, Sharon Rossi, declare as follows:

20         1.      I have personal knowledge of the facts stated herein, and if called to testify, I

21  could and would testify competently thereto.

22         2.      I am an associate with the law firm Seyfarth Shaw LLP, counsel of record for

23  Serco Inc., improperly sued as Serco, Inc, De ("Serco Inc."), Serco Group PLC ("Serco Group"),

24  Raquel Sanchez, Keith Hulbert and Mike Henry (collectively "Defendants"). I am licensed to

25  practice law in California and am a member in good standing of the California State Bar. I make

26  this declaration in support of Defendants' Notice of Removal.

27         3.      Attached hereto as **Exhibit A**, is a true and correct copy the of the Complaint filed

28  by Plaintiff Timothy Sanocki in San Francisco Superior Court on August 10, 2007.

- 1 -

DECLARATION OF SHARON ONGERTH ROSSI IN SUPPORT OF NOTICE OF REMOVAL

1    4.      Attached hereto as **Exhibit B**, is a true and correct copy of Plaintiff's First

2  Amended Complaint.

3    5.      Attached hereto as **Exhibit C,** is a true and correct copy of the California

4  Supreme Court opinion in *Jones v. Lodge at Torrey Pines Partnership, et al.*

5    6.      Attached hereto as **Exhibit D**, is a true and correct copy of the Request for

6  Dismissal of Defendant Paul Carpmael, filed by Plaintiff on December 19, 2007.

7    7.      I am familiar with the business operations of both Serco Inc. and Serco Group and

8  state the following upon information and belief:

9    8       Serco Inc. is incorporated under the laws of the State of New Jersey.

10   9       Serco Group is incorporated under the laws of the United Kingdom.

11   10.     Although Serco Inc. is registered to business in nearly all fifty states, its central

12  operations, major business units and corporate headquarters are located in Virginia.

13   10.     All of Serco Group's central operations, business units and corporate

14  headquarters are located in the United Kingdom.

15    I declare under penalty of perjury under the laws of the State of California that the

16  forgoing is true and correct.  Executed this 30th day of May, 2008 at San Francisco, California.

17

18

19                                          Sharon Rossi

20

21

22

23

24

25

26

27

28

SF1 283240.1  DECLARATION OF SHARON ONGERTH ROSSI IN SUPPORT OF NOTICE OF REMOVAL

# EXHIBIT A

Law Offices of David S. Secrest
A Professional Corporation
David S. Secrest, Esq. [State Bar #142299]
504 Plaza Alhambra, Suite 201
P. O. Box 1029
El Granada, CA 94018-1029
Tel: 650-726-7461
Fax: 650-726-7471
Attorney for Plaintiff
Timothy Sanocki

FILED
San Francisco County Superior Court

JUL 3 0 2007

GORDON PARK-LI, Clerk
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

DEC 2 9 2007 - 9:00 AM

DEPARTMENT 212

SUMMONS ISSUED

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED

TIMOTHY SANOCKI,

Plaintiff,

vs.

SERCO GROUP PLC, SERCO, INC. DE,
PAUL CARPMAEL, an individual,
RAQUEL SANCHEZ, an individual, and
DOES 1-50, inclusive,

Defendants.

Case No. CGC 07 - - 465608

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**

1.    Wrongful Termination in Violation of Public Policy [Cal.Gov.Code §81002- Political Reform Act of 1974; CFRA- California Govt. Code §12945.2(a)];
2.    Violation of Rights under the California Family Rights Act ("CFRA") [California Govt. Code §12945.2(a)];
3.    Discrimination and Discharge in Violation of the CFRA [California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7];
4.    Retaliation in Violation of the CFRA [California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7]; and
5.    Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**    **BY FAX**

Plaintiff hereby demands a jury trial.

Plaintiff TIMOTHY SANOCKI, by and through his attorneys, hereby alleges, on information and belief, as follows:

**THE PARTIES**

1.    Plaintiff TIMOTHY SANOCKI ("Plaintiff") is an individual and resides in the City of San

-1-

Law Offices of
David S. Secrest
El Granada, CA

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1   Francisco, County of San Francisco, California.  At all times pertinent, Plaintiff was a long-term

2   employee of Defendant SERCO GROUP PLC, as well as SERCO, INC. DE, a wholly owned

3   subsidiary of SERCO GROUP PLC.

4   2.      Plaintiff was, at all times material herein, an "employee," as defined by California

5   Government Code Section ("Govt. Code §") 12926(c), part of the California Fair Employment and

6   Housing Act ("FEHA," Government Code Sections 12900 et seq.) and within the definition of

7   Title VII of the Civil Rights Act of 1964, as amended ["Title VII", 42 U.S.C. 2000(e)].

8   3.      Defendant SERCO GROUP PLC is a foreign corporation with corporate headquarters

9   located in the London suburb of Richmond.[1]  SERCO GROUP PLC was, at all times pertinent,

10  qualified to do business in the State of California, and did business in the State of California,

11  County of San Francisco.  SERCO GROUP PLC is a Business Services company based in the

12  London suburb of Richmond.  It is listed on the London Stock Exchange and is a constituent of the

13  FTSE 250 Index.  SERCO GROUP PLC was founded in 1929 as a United Kingdom division of

14  the Radio Corporation of America and initially provided services to the cinema industry.  It

15  changed its name to SERCO in 1987 and has been a stock exchange listed company since 1988.

16  4.      SERCO, INC. DE is the name on the paycheck given to Plaintiff from SERCO GROUP

17  PLC.  It is believed that SERCO, INC. DE is, in actuality, a name used by SERCO GROUP PLC

18  for its North American operating unit,[2] which is located in San Diego, CA, at 3760 Convoy Street.

19  5.      SERCO GROUP PLC and SERCO, INC. DE were, at all pertinent times, the joint

20  employers of Plaintiff.

21  6.      Plaintiff is informed and believes, and thereon alleges, that Defendants SERCO GROUP

22  PLC and SERCO, INC. DE are foreign corporations that actively solicit and do business in the

23  Sate of California, County of San Francisco, and are incorporated in the State of New Jersey.

24  7.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned,

25  and continuing to the present, Defendants SERCO GROUP PLC and SERCO, INC. DE have

26  operated, and currently operate, as a single business enterprise.  Though such Defendants have

27  _____
    [1] http://www.serco.com

28  [2] http://www.serco-na.com

Law Offices of
David S. Secrest
El Granada, CA

-2-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1    multiple corporate, entity, and individual personalities, there is but one enterprise and this

2    enterprise has been so handled that it should respond, as a whole, for the acts committed by

3    SERCO GROUP PLC and SERCO, INC. DE, as alleged herein. Each corporation, individual and

4    entity has been, and is, merely an instrument and conduit for the others in the prosecution of a

5    single business venture. There is such a unity of interest and ownership among these Defendants

6    that the separate personalities of the corporations, individuals and entities no longer exist. If the

7    acts of SERCO GROUP PLC and SERCO, INC. DE are treated as those of one or both of these

8    corporations alone, an inequitable result will follow in that these corporate defendant(s) may have

9    insufficient assets to respond to the ultimate award of compensatory damages, costs, attorneys fees

10   and punitive damages entered in this case. Further, an award of punitive damages against one or

11   more of the corporate defendants alone will not accurately reflect the amount necessary for

12   punishment of the entire business enterprise conducted by SERCO GROUP PLC and SERCO,

13   INC. DE.  SERCO GROUP PLC and SERCO, INC. DE. are therefore referred to hereinafter

14   jointly as "SERCO."

15   8.    Defendant PAUL CARPMAEL ("CARPMAEL") was and is at all times relevant herein a

16   manager employed by SERCO, and acted as SERCO's Project Director, and as Plaintiff's

17   Supervisor.  CARPMAEL was at all times relevant herein a resident of the County of San

18   Francisco, State of California. CARPMAEL is personally liable for his acts alleged herein below

19   under California Government Code Sections 12926(r), 12940(h) and 12940(j) and related laws.

20   9.    Defendant RAQUEL SANCHEZ ("SANCHEZ") was and is at all times relevant herein a

21   manager employed by SERCO, and acted as SERCO's Human Resource Generalist. SANCHEZ

22   was at all times relevant herein a resident of the County of San Diego, State of California.

23   SANCHEZ is personally liable for her acts alleged herein below under California Government

24   Code Sections 12926(r), 12940(h) and 12940(j) and related laws.

25   10.   All the conduct complained of herein occurred in the County of San Francisco.

26   11.   Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

27   50, inclusive, and therefore sues these defendants by such fictitious names and capacities when

28   ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously

-3-

1  named defendant is responsible in some manner for the occurrences herein alleged, and that

2  plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

3  12.    Plaintiff is informed and believes and thereupon alleges that, at all times material herein,

4  each of the defendants was the agent, employee and/or working in concert with his co- defendants

5  and was acting within the course and scope of such agency, employment and/or concerted activity.

6  To the extent that certain defendants perpetrated certain acts and omissions, the remaining

7  defendant or defendants confirmed and ratified said acts and omissions.

8  13.    Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each

9  defendant was completely dominated and controlled by his co-defendant and each was the alter

10  ego of the other.

11  14.    Whenever and wherever reference is made in this complaint to any act by a defendant or

12  defendants, such allegations and reference shall also be deemed to mean the acts and failures to act

13  of each defendant acting individually, jointly, and severally.

14  15.    Whenever and wherever reference is made to individuals who are not named as plaintiff or

15  defendants in this complaint but were employees/agents of Defendant SERCO, such individuals at

16  all relevant times acted on behalf of defendant SERCO within the scope of their employment.

17                                  **JURISDICTION AND VENUE**

18  16.    This Court has jurisdiction over Plaintiff's claims pursuant to Cal.Gov.Code §12945.2(a); 2

19  Cal.C.Regs. §7297.7; and Cal.Gov.Code §81002- Political Reform Act of 1974.

20  17.    Venue is proper based on Defendant SERCO's status as a foreign corporation that has not

21  designated a California principal place of business with the California Secretary of State.  This fact

22  means that suit may be filed in any county in the State.

23  18.    At all times pertinent, Plaintiff performed the functions of his employment for SERCO in

24  San Francisco County, California.  Specifically, Plaintiff was employed by SERCO as a Contract

25  Manager from January 1997 to his termination of employment, as more fully alleged below, on

26  February 6, 2007.

27                          **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

28  19.    On May 10, 2007, Plaintiff filed complaints against the defendants named in this

Law Offices of
David S. Secrest
El Granada, CA

-4-

1  Complaint with the Department of Fair Employment and Housing ("DFEH"). A true and correct

2  copy of same is attached hereto as **Ex. "A,"** and is incorporated herein by reference. On May 23,

3  2007, Plaintiff received Right-to-Sue Notices from the DFEH as to the defendants named in this

4  Complaint. True and correct copies of same are also attached hereto as **Ex. "A,"** and incorporated

5  herein by reference.

6  20.      Plaintiff has exhausted all of the administrative remedies required by the California Fair

7  Employment and Housing Act §12900 *et seq.*

8                      <u>**FACTS COMMON TO ALL CAUSES OF ACTION**</u>

9  21.      At all times pertinent, Plaintiff performed the functions of his employment for SERCO in

10 San Francisco County, California. Specifically, Plaintiff was employed by SERCO as a Contract

11 Manager from January 1997 to his termination of employment, as more fully alleged below, on

12 February 6, 2007. Plaintiff's function was to work with the City and County of San Francisco's

13 Municipal Transportation Authority (formerly Department of Parking and Transportation),

14 assuming full responsibility for the day-to-day operations of a contractual agreement between the

15 City and County of San Francisco and SERCO (Contract #BPPK02000033) ("the Contract"). My

16 role as defined by agreement was to act as Contract Manager. At all times pertinent, Plaintiff

17 fulfilled his duties and responsibilities in exemplary fashion.

18 22.      In July 2006, SERCO informally announced its decision to appoint CARPMAEL, former

19 Project Director, as Capture Manager for the San Francisco Parking Ticket Processing Request for

20 Proposal. Shortly after CARPMAEL's assumption of this position, his attitude and demeanor

21 towards Plaintiff became demanding and hostile. CARPMAEL immediately began pressuring

22 Plaintiff for information that was unrelated to the Ticket Processing Request for Proposal and

23 repeatedly disrespected Plaintiff before my staff. In addition to directing hostility toward

24 Plaintiff, Plaintiff is informed and believes that during the first 90 days of CARPMAEL's

25 assumption of this position, CARPMAEL was performing impromptu and clandestine auditing of

26 the Contract without officially informing the Contract Manger of the purpose/reason for the audit.

27 23.      On October 27, 2006, CARPMAEL instructed Plaintiff and two other SERCO employees

28 (Alexiy Sukhenko and Andrew Kang) to provide CARPMAEL with personal checks in the form of

Law Offices of
David S. Secrest
El Granada, CA

-5-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1  campaign contributions to prospective politicians. Plaintiff did as he was instructed, but this
2  request caused him great concern because it appeared to be illegal and unethical in multiple
3  respects. Plaintiff believed the incident may have constituted a violation of Federal accounting
4  practices established by DCAA, and could affect SERCO's Federal Sector business. An important
5  function of Plaintiff's duties was to verify appropriate accounting procedures and documentation
6  with respect the day-to-day operations of SERCO, according to SERCO policies and procedures;
7  and Generally Accepted Accounting Principles ("GAAP").[3]

8  24.    Despite this concern, as instructed, Plaintiff made out two (2) $250.00 checks to "Doug
9  Chan for Supervisor." Carbon copies of the true and correct imprints of Plaintiff's check register
10  are attached hereto as **Ex. "B."** CARPMAEL tried to reassure Plaintiff that, "according to the
11  lobbyist" it was "common practice."

12  25.    In addition to unethical/illegal campaign contributions, CARPMAEL then instructed that
13  Plaintiff "run the expenditure thru company petty cash."

14  26.    On or about November 18, 2006, Plaintiff received a "thank you" for the previously
15  mentioned contribution form the campaign for "Doug Chan for Supervisor," a true and correct
16  copy of which is attached hereto as **Ex. "C."**

17  27.    During numerous discussions in November 2006, Plaintiff reported to SERCO Vice-
18  President Keith Hulbert; SERCO Human Resource Generalist SANCHEZ, SERCO; SERCO
19  Finance Manager Allen Widdowson; and other Human Resources staff and management staff; that
20  CARPMAEL was placing the company at risk by asking staff to write personal checks so he could,
21  in turn, make unethical/illegal political campaign contributions to local politicians. Plaintiff's
22  reports seemed, to Plaintiff, to be ignored by SERCO.

23  28.    On Monday December 4-5, 2006 SANCHEZ visited the SERCO's San Francisco contract
24  site to address several outstanding Human Resource issues (as described in the previous e-mails to
25  Keith Hulbert). In preparation for the meeting, Plaintiff intended to address all concerns he

26

27  _____
[3] Generally accepted accounting principles ("GAAP") are the accounting rules used to prepare financial statements for
28  publicly traded companies and many private companies in the United States. GAAP constitutes firm and substantial
   public policies that inure to the benefit of the public.

1  considered unresolved and/or pending. SANCHEZ spent most of her time in discussion with

2  CARPMAEL.

3  29.    On December 5, 2006, a meeting was scheduled to be addressed was an unresolved

4  employee relations issue. The meeting was chaired by SANCHEZ and was established with

5  guidelines that a commitment from both employees was required and that the purpose of the

6  meeting was to identify a solution for moving forward; a timeline of 30 minutes was set aside to do

7  so. After approximately 40 minutes of repartee from both employees Plaintiff interrupted the

8  conversation to explain that he had become ill due to extreme stress. The conversation continued

9  for another 5 minutes or so and then SANCHEZ suggested that the discussion be tabled for a later

10  date, and the both staff left the room.

11  30.    Plaintiff then made a formal complaint to the Serco Ethics Hotline to report all of the

12  incidents that he felt were unethical, including CARPMAEL's unethical/illegal political campaign

13  contributions to local politicians. Plaintiff contacted SERCO Executive Rich Gilligan and

14  explained that he had several incidents to discuss with him. Plaintiff reported the fact that

15  CARPMAEL had asked staff to write checks from their personal bank so that he could attend

16  political functions and make financial contributions on behalf of SERCO. Plaintiff reported the

17  fact that he was instructed by CARPMAEL to run the costs thru SERCO's petty cash accounts

18  (and in one instance was given a fuel receipt to be used in replace of one of the reimbursements).

19  Plaintiff reported the fact that he thought CARPMAEL's unethical/illegal political campaign

20  contributions was creating a hostile work environment. Gilligan replied that he did not want to

21  confuse the issues human resource with ethic issues.

22  31.    As a result of the above-alleged conduct, including the unethical/illegal activities alleged

23  above, Plaintiff was caused to become seriously ill, due to stress, and due to the exacerbation of his

24  pre-existing thyroid medical condition, which required Plaintiff to take a medical leave of absence

25  ("LOA") from SERCO. Plaintiff submitted medical documentation for his LOA from his treating

26  health care provider on December 6, 2006, a true and correct copy of which is attached hereto as

27  Ex. "D." On December 8, 2006, Plaintiff submitted a formal request fro LOA, a true and correct

28  copy of which is attached hereto as Ex. "E." Plaintiff submitted further medical documentation

Law Offices of
David S. Secrest
El Granada, CA

-7-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1    for his LOA from his treating health care provider on December 11, 2006, a true and correct copy

2    of which is attached hereto as **Ex. "F."**

3    32.     On or about December 14, 2006, Plaintiff attended a formal meeting regarding his ethics

4    complaint regarding CARPMAEL's unethical/illegal political campaign contributions at the San

5    Francisco offices of McKenna Long & Aldridge LLP, specifically attorney Camille K. Fong, and

6    at which SERCO executive David Whiting attended.  A true and correct copy of the written

7    agenda  is for the meeting is attached hereto as **Ex. "G."**

8    33.     On or about December 13, 2006, Plaintiff submitted a further application for his

9    FMLA/CFRA LOA, a true and correct copy of which is attached hereto as **Ex. "H."**  On or about

10   December 14, 2006, Plaintiff received from SERCO an acknowledgment of receipt of same, a true

11   and correct copy of which is attached hereto as **Ex. "I."**

12   34.     While on LOA from SERCO, after reporting the incident to Serco Ethics Representative

13   Richard Gilligan, Plaintiff received several follow-up phone calls reassuring his that the incident

14   was being taken very seriously and that a committee had been appointed to review the case and the

15   outcome was pending.

16   35.     On or about December 28, 2006, Plaintiff received from SERCO a denial of Plaintiff's

17   request for FMLA/CFRA LOA, a true and correct copy of which is attached hereto as **Ex. "J."**

18   Erroneously, the bogus rejection falsely asserted that the basis for the illegal denial was: "No

19   documentation was returned to certify the leave."

20   36.     On or about January 22, 2007, Plaintiff transmitted to SERCO a request for a review of

21   SERCO's denial of his FMLA/CFRA LOA, a true and correct copy of which is attached hereto as

22   **Ex. "K."**

23   37.     On February 6, 2007, in direct response to Plaintiff's request for a review of SERCO's

24   denial of his FMLA/CFRA LOA, SANCHEZ, acting on her own behalf and on behalf of SERCO,

25   sent to Plaintiff a notice of Plaintiff's termination from employment with SERCO, in which she

26   reiterated the false assertions previously transmitted regarding the bogus reasons for the illegal

27   denial of Plaintiff's LOA, a true and correct copy of which is attached hereto as **Ex. "L."**

28   38.     The next day, SANCHEZ, acting on her own behalf and on behalf of SERCO, sent to

Law Offices of
David S. Secrest
El Granada, CA

-8-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1    Plaintiff a reiteration of SERCO's notice of Plaintiff's termination from employment with SERCO,

2    in which she makes specific reference to the lack of any alleged investigation of Plaintiff's ethics

3    complaint regarding CARPMAEL's unethical/illegal political campaign contributions, a true and

4    correct copy of which is attached hereto as **Ex. "M."**

5    39.    On or about February 28, 2007, Plaintiff received from SERCO a reversal of its prior

6    denial of Plaintiff's request for FMLA/CFRA LOA, a true and correct copy of which is attached

7    hereto as **Ex. "N."** The notice and letter reiterated the termination decision.

8    40.    Plaintiff's termination from employment with SERCO was a direct result of his expressing

9    opposition to the illegal activity alleged herein, which opposition constituted protected activity

10   under California law, specifically Cal.Gov.Code §81002- Political Reform Act of 1974.

11   41.    To date, Plaintiff has yet to receive any notification from SERCO of the outcome of any

12   alleged investigation of his ethics complaint regarding CARPMAEL's unethical/illegal political

13   campaign contributions.  The stated reasons for Plaintiff's termination from employment with

14   SERCO were and are false and pretextual.

15   42.    Additionally and alternatively, Plaintiff's termination from employment with SERCO was

16   a direct result of his request fro a medical LOA under the provisions of the CFRA [California

17   Govt. Code §12945.2(a)], which opposition constituted protected activity under California law.

18   43.    SANCHEZ AND CARPMAEL are individually liable for retaliation under Cal.Gov.Code

19   §12940(h).

20   44.    As a direct and proximate result of Plaintiff's termination from employment with SERCO,

21   Plaintiff has sustained general and compensatory damages that are subject to proof at the time of

22   trial.

23                          **FIRST CAUSE OF ACTION**
                   **Wrongful Termination in Violation of Public Policy**
24   [Cal.Gov.Code §81002- Political Reform Act of 1974; California Govt. Code §12945.2(a)]
                   (Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)

25   45.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

26   contained in Paragraphs 1 through 44 in this Complaint as if they were fully set forth here.

27   46.    Plaintiff's termination from employment with SERCO was a direct result of his expressing

28

Law Offices of
David S. Secrest
El Granada, CA

9.

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1   opposition to the illegal activity alleged herein, which opposition constituted protected activity

2   under California law, specifically Cal.Gov.Code §81002- Political Reform Act of 1974.

3       47.     Additionally and alternatively, Plaintiff's termination from employment with SERCO was

4   a direct result of his request fro a medical LOA under the provisions of the CFRA [California

5   Govt. Code §12945.2(a)], which opposition constituted protected activity under California law.

6       48.     As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

7   will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

8   and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

9   treatment by physicians, psychiatrists and other health professionals, and for other incidental

10  medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

11  employment benefits.  Plaintiff is thereby entitled to general and compensatory damages in

12  amounts to be proven at trial.

13      49.     The conduct of defendants and each of them including DOES 1 through 50 and/or their

14  agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

15  a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

16  defendants' actions.  Defendants and each of them, and their agents/employees or supervisors,

17  authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is

18  entitled to punitive damages against each of said defendants.

19              **SECOND CAUSE OF ACTION**
20              **Violation of Rights under CFRA**
                [California Govt. Code §12945.2(a)]
21      (Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)

22      50.     Plaintiff hereby realleges and incorporates herein by reference each and every allegation

23  contained in Paragraphs 1 through 49 in this Complaint as if they were fully set forth here.

24      51.     It is an unlawful employment practice for a covered employer to violate an employee's

25  rights under the CFRA.  [Govt. Code §12945.2(a).]

26      52.     It is unlawful for an employer to refuse an employee's request for up to twelve weeks of

27  'family care and medical leave' in a year.  [Govt. Code §12945.2(a).]

28      53.     In perpetrating the above-described action, the defendants and each of them and or their

Law Offices of
David S. Secrest
El Granada, CA

-10-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1   agents/employees engaged in a pattern and practice of unlawful discrimination in violation of

2   Govt. Code §12945.2(a). At all relevant times herein and in violation of said provisions,

3   defendants and each of them, and/or their agents/employees, violated Plaintiff's rights under the

4   CFRA, and refused Plaintiff's request for up to twelve weeks of 'family care and medical leave' in

5   a year. In addition, defendants and each of them and/or their agents/employees engaged in such

6   unlawful violations and denial of statutory rights.

7   54.    Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the

8   enforcement procedures and remedies available for its violation are the same as for other FEHA

9   violations.

10   55.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the

11   same remedies as are available for violations of the FEHA (discussed above). These remedies

12   include:  equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an

13   award of back pay, front pay and other compensatory damages, including emotional distress,

14   punitive damages and reasonable costs and attorney fees. [Govt. Code §12970.]

15   56.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

16   will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

17   and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

18   treatment by physicians, psychiatrists and other health professionals, and for other incidental

19   medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

20   employment benefits. Plaintiff is thereby entitled to general and compensatory damages in

21   amounts to be proven at trial.

22   57.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

23   agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

24   a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

25   defendants' actions. Defendants and each of them, and their agents/employees or supervisors,

26   authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is

27   entitled to punitive damages against each of said defendants.

28   //

Law Offices of
David S. Secrest
El Granada, CA

-11-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

### THIRD CAUSE OF ACTION
#### Discrimination and Discharge Retaliation in Violation of CFRA
[California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7]
(Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)

58.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 57 in this Complaint as if they were fully set forth here.

59.    It is an unlawful employment practice for a covered employer to discriminate, discharge or retaliate against an employee for exercising any right under the CFRA or for giving information or testimony in connection with any investigation or inquiry into an alleged violation of the CFRA. [Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.]

60.    SERCO is an employer covered by the CFRA.  Plaintiff was an employee eligible to take CFRA leave.  Plaintiff exercised, or attempted to exercise, his right to take leave for a qualifying CFRA purpose.  Plaintiff suffered an adverse employment action because of his exercise of such right.

61.    In perpetrating the above-described action, the defendants and each of them and or their agents/employees engaged in a pattern and practice of unlawful discrimination, discharge and retaliation in violation of Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.  At all relevant times herein and in violation of said provisions, defendants and each of them, and/or their agents/employees, violated Plaintiff's rights under the CFRA, and refused Plaintiff's request for up to twelve weeks of 'family care and medical leave' in a year.  In addition, defendants and each of them and/or their agents/employees engaged in such unlawful violations and denial of statutory rights.

62.    Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the enforcement procedures and remedies available for its violation are the same as for other FEHA violations.

63.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the same remedies as are available for violations of the FEHA (discussed above).  These remedies include:  equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an award of back pay, front pay and other compensatory damages, including emotional distress,

Law Offices of
David S. Secrest
El Granada, CA

-12-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1    punitive damages and reasonable costs and attorney fees. [California Govt. Code §12970.]

2    64.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

3    will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

4    and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

5    treatment by physicians, psychiatrists and other health professionals, and for other incidental

6    medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

7    employment benefits.  Plaintiff is thereby entitled to general and compensatory damages in

8    amounts to be proven at trial.

9    65.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

10   agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

11   a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

12   defendants' actions.  Defendants and each of them, and their agents/employees or supervisors,

13   authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is

14   entitled to punitive damages against each of said defendants.

15

16                            **FOURTH CAUSE OF ACTION**
                              Retaliation in Violation of CFRA
17         [California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7]
                              (Against All Defendants)
18

19   66.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

20   contained in Paragraphs 1 through 65 in this Complaint as if they were fully set forth here.

21   67.    It is an unlawful employment practice for a covered employer to discriminate, discharge or

22   retaliate against an employee for exercising any right under the CFRA or for giving information or

23   testimony in connection with any investigation or inquiry into an alleged violation of the CFRA.

24   [Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.]

25   68..   SANCHEZ AND CARPMAEL are individually liable for retaliation under Cal.Gov.Code

26   §12940(h).

27   69.    SERCO is an employer covered by the CFRA.  Plaintiff was an employee eligible to take

28   CFRA leave.  Plaintiff exercised, or attempted to exercise, his right to take leave for a qualifying

Law Offices of
David S. Secrest
El Granada, CA

-13-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

1   CFRA purpose. Plaintiff suffered an adverse employment action because of his exercise of such
2   right.

3   70.    In perpetrating the above-described action, the defendants and each of them and or their
4   agents/employees engaged in a pattern and practice of unlawful discrimination, discharge and
5   retaliation in violation of Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7. At all
6   relevant times herein and in violation of said provisions, defendants and each of them, and/or their
7   agents/employees, violated Plaintiff's rights under the CFRA, and refused Plaintiff's request for up
8   to twelve weeks of 'family care and medical leave' in a year. In addition, defendants and each of
9   them and/or their agents/employees engaged in such unlawful violations and denial of statutory
10  rights.

11  71.    Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the
12  enforcement procedures and remedies available for its violation are the same as for other FEHA
13  violations.

14  72.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the
15  same remedies as are available for violations of the FEHA (discussed above). These remedies
16  include: equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an
17  award of back pay, front pay and other compensatory damages, including emotional distress,
18  punitive damages and reasonable costs and attorney fees. [California Govt. Code §12970.]

19  73.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and
20  will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish
21  and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for
22  treatment by physicians, psychiatrists and other health professionals, and for other incidental
23  medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other
24  employment benefits. Plaintiff is thereby entitled to general and compensatory damages in
25  amounts to be proven at trial.

26  74.    The conduct of defendants and each of them including DOES 1 through 50 and/or their
27  agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with
28  a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

Law Offices of
David S Secrest
El Granada, CA

-14-

1    defendants' actions. Defendants and each of them, and their agents/employees or supervisors,

2    authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is

3    entitled to punitive damages against each of said defendants.

4

5                          **FIFTH CAUSE OF ACTION**
                    **Intentional Infliction of Emotional Distress**
6                               (Against All Defendants)

7    75.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

8    contained in Paragraphs 1 through 73 in this Complaint as if they were fully set forth here.

9    76.    The conduct of defendants, and each of them, as alleged above, was outrageous and outside

10   the normal scope of the employment relationship. Defendants, and each of them, knew that their

11   conduct would result in plaintiff's severe emotional distress, and said conduct was perpetrated by

12   defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability

13   of inflicting, humiliation, mental anguish, and severe emotional distress upon plaintiff. Such

14   conduct did, in fact, result in severe emotional distress caused to Plaintiff.

15   77.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

16   will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

17   and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

18   treatment by physicians, psychiatrists and other health professionals, and for other incidental

19   medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

20   employment benefits. Plaintiff is thereby entitled to general and compensatory damages in

21   amounts to be proven at trial.

22   78.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

23   agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

24   a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

25   defendants' actions. Defendants and each of them, and their agents/employees or supervisors,

26   authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is

27   entitled to punitive damages against each of said defendants.

28

-15-

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

1. For compensatory and general damages in an amount according to proof;

2. For punitive damages against all defendants under Civ. Code §3294;

3. For injunctive relief pursuant to California Government Code Section 12965(b)(3), including, without limitation, a requirement that Defendants SERCO GROUP PLC, and SERCO, INC. DE conduct training for all employees, supervisors, and management on the requirements of the Fair Employment and Housing Act ("FEHA"), the rights and remedies of those who allege a violation of the FEHA, and the employer's internal grievance procedures;

4. Plaintiff is also entitled to injunctive relief pursuant to Government Code Section 12965(b) to restrain Defendants SERCO GROUP PLC, and SERCO, INC. DE from engaging in sexual orientation harassment, and to order Defendants SERCO GROUP PLC, and SERCO, INC. DE to take all reasonable steps to prevent harassment from occurring, to promptly investigate claims of harassment, to remedy claims of harassment, to prevent retaliation, and to reinstate, or promote, Plaintiff to his former position as an employeed of Defendant Defendants SERCO GROUP PLC, and SERCO, INC. DE with full or accelerated pay and benefits;

5. Injunctive and other equitable relief enjoining any further unlawful business practices and establishing affirmative measures to ensure lawful conduct;

6. For statutory attorneys' fees and costs;

7. For prejudgment and post-judgment interest according to any applicable provision of law, according to proof;

8. For costs of suit;

9. For such other and further relief as the court deems proper.

Respectfully submitted.


Dated: July 26, 2007


Law Offices of David S. Secrest

David S. Secrest
Attorney for Plaintiff
Timothy Sanocki

Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No.

Law Offices of
David S. Secrest
El Granada, CA

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

ARNOLD SCHWARZENEGGER, Governor

1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



May 23, 2007

David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:   E200607A1065-00-prc
      Sanocki/Serco, Inc. DE

Dear David S. Secrest:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator


cc:    Case File


Eileen Rivera Chap
Leave Coordinator
Serco, Inc. DE
2650 Park Tower Dr.
Vienna, VA  22180

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 A-1065-00-prc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Timothy Sanocki

ADDRESS
930 Sutter St.

TELEPHONE NUMBER (INCLUDE AREA CODE)
415-368-7652

CITY/STATE/ZIP
San Francisco, CA 94109

COUNTY  San Francisco     COUNTY CODE

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
Serco, Inc. DE

ADDRESS
2650 Park Tower Dr.

TELEPHONE NUMBER (Include Area Code)
(571) 226-5000

CITY/STATE/ZIP
Vienna, VA 22180

DFEH USE ONLY

NO. OF EMPLOYEES/MEMBERS (if known)
1000+

COUNTY

COUNTY CODE

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)
February 6, 2007

RESPONDENT CODE

THE PARTICULARS ARE:
On February 6, 2007          I was          ✓ fired
                                            laid off
                                            demoted
                                            harassed
                                            genetic characteristics testing
                                            forced to quit

                                            denied employment
                                            denied promotion
                                            denied transfer
                                            denied accommodation
                                            impermissible non-job-related inquiry
                                            other (specify)

                                            ✓ denied family or medical leave
                                            denied pregnancy leave
                                            denied equal pay
                                            denied right to wear pants
                                            denied pregnancy accommodation

by Eileen Rivera Chap, Leave Coordinator
   Name of Person

Job Title (supervisor/manager/personnel director/etc.)

because of my:          sex
                        age
                        religion
                        race/color

                        national origin/ancestry
                        marital status
                        sexual orientation
                        association

                        ✓ physical disability
                        mental disability

                        other (specify)

                        cancer
                        genetic characteristic

                        ✓ (circle one) filing protesting; participating in investigation/retaliation (or)

the reason given by Serco was the failure to provide documentation for the Family/CFRA Leave of Absence
                        Name of Person and Job Title

Was because of (please state what you believe to be reason(s)) On December 6, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On January 9, 2007, I was notified by Serco that the Family/CFRA Leave was retroactively granted. reason that my "position was eliminated." On February 27, 2007, I was fired for the stated

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated as my information and belief, and as to those matters I believe it to be true.

Dated April 16, 2007

At San Francisco, CA
        City

COMPLAINANT'S SIGNATURE      4/16/2007

RECEIVED

MAY 10 2007

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:   May 10, 2007

BY: SAN FRANCISCO DISTRICT OFFICE
STATE OF CALIFORNIA

STATE OF CALIFORNIA  STATE AND CONSUMER SERVICES AGENCY
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



May 23, 2007

David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:    E200607A1066-00-prc
       Sanocki/Serco Group PLC/Serco House

Dear David S. Secrest:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator

cc:     Case File

Eileen Rivera Chap
Leave Coordinator
Serco Group PLC/Serco House
16 Bartley Wd Bs Pk Bartley Wy
Hook Hampshire RG27 9UY, XX  00000-0000

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 A-1066-00-prc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (Indicate Mr. or Ms.)
Timothy Sanocki

ADDRESS
930 Sutter St.

TELEPHONE NUMBER (INCLUDE AREA CODE)
415-368-7652

CITY/STATE/ZIP
San Francisco, CA 94109

COUNTY San Francisco    COUNTY CODE

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
Serco Group PLC

ADDRESS
Serco House, 16 Bartley Wood Business Park, Bartley Way, Hook

TELEPHONE NUMBER (Include Area Code)
+44 (0)1256 745900

CITY/STATE/ZIP
Hampshire, RG27 9UY

COUNTY United Kingdom    COUNTY CODE

DFEH USE ONLY

NO. OF EMPLOYEES/MEMBERS (if known)
1000+

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)
February 6, 2007

RESPONDENT CODE

THE PARTICULARS ARE:
On February 6, 2007    I was    ✓ fired / laid off / demoted / harassed / genetic characteristics testing / forced to quit / denied employment / denied promotion / denied transfer / denied accommodation / impermissible non-job-related inquiry / other (specify) / ✓ denied family or medical leave / ✓ denied pregnancy leave / denied equal pay / denied right to wear pants / denied pregnancy accommodation

by Eileen Rivera Chap, Leave Coordinator
Name of Person    Job Title (supervisor/manager/personnel director/etc.)

because of my: sex / age / religion / race/color / national origin/ancestry / marital status / sexual orientation / association / ✓ physical disability / mental disability / other (specify) / cancer / genetic characteristic / ✓ (Check one) filing/ protesting/ participating in investigation (retaliation for)

the reason given by Serco was the failure to provide documentation for the Family/CFRA Leave of Absence
Name of Person and Job Title

Was because of (please state what you believe to be reason(s))
On December 6, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On February 9, 2007, I was fired for the stated reason that my "position was eliminated." On February 27, 2007, I was notified by Serco that the Family/CFRA Leave was retroactively granted.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated April 16, 2007

At San Francisco, CA
City

COMPLAINANT'S SIGNATURE    4/16/2007

RECEIVED
MAY 1 0 2007
BY: SAN FRANCISCO DISTRICT OFFICE, CALIFORNIA

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: May 10, 2007

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

ARNOLD SCHWARZENEGGER, Governor

1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



May 23, 2007


David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:    E200607A1065-01-prc
       Sanocki/Hulbert, Keith, As An Individual

Dear David S. Secrest:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2007 because an immediate right-to-sue notice was requested.  DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Herbert Yarbrough*

Herbert Yarbrough
District Administrator

cc:    Case File

Eileen Rivera Chap
Leave Coordinator
Serco, Inc. DE
2650 Park Tower Dr.
Vienna, VA  22180

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH # E200607 A-1065-01-prc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Timothy Sanocki

TELEPHONE NUMBER (INCLUDE AREA CODE)
415-368-7652

ADDRESS
930 Sutter St.

CITY/STATE/ZIP
San Francisco, CA 94109

COUNTY San Francisco      COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Keith Hulbert

TELEPHONE NUMBER (include Area Code)
(571) 226-5000

ADDRESS
2650 Park Tower Dr.

CITY/STATE/ZIP
Vienna, VA 22180

COUNTY

DFEH USE ONLY

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)
1000+

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)
February 6, 2007

RESPONDENT CODE

THE PARTICULARS ARE:
On February 6, 2007      I was

✓ fired
___ laid off
___ demoted
___ harassed
___ genetic characteristics testing
___ forced to quit

___ denied employment
___ denied promotion
___ denied transfer
___ denied accommodation
___ impermissible non-job-related inquiry
___ other (specify)

✓ denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by Eileen Rivera Chap, Leave Coordinator
Name of Person

Job Title (supervisor/manager/personnel director/etc.)

because of my:
___ sex
___ age
___ religion
___ race/color

___ national origin/ancestry
___ marital status
___ sexual orientation
___ association

✓ physical disability
___ mental disability

___ other (specify)

___ cancer
___ genetic characteristic

✓ (Circle one) filing;
protesting; participating in
investigation (retaliation for)

the reason given by Serco was the failure to provide documentation for the Family/CFRA Leave of Absence
Name of Person and Job Title

Was because of
(please state
what you believe
to be reason(s))

On December 6, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied
for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On February 9, 2007, I was fired for the stated
reason that my "position was eliminated." On February 27, 2007, I was notified by Serco that the Family/CFRA leave was retroactively granted.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must
visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act,
whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or
reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and
belief, and as to those matters I believe it to be true.

Dated April 16, 2007

At San Francisco, CA
City

COMPLAINANT'S SIGNATURE    4/16/2007

RECEIVED

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: May 10, 2007

MAY  2007

BY SAN FRANCISCO DISTRICT OFFICE STATE OF CALIFORNIA

**\* \* \* EMPLOYMENT \* \* \***

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH #  E200607 A-1065-01-prc

DFEH USE ONLY

### CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| | |
|---|---|
| YOUR NAME (indicate Mr. or Ms.)  Timothy Sanocki | |
| ADDRESS  930 Sutter St. | TELEPHONE NUMBER (INCLUDE AREA CODE)  415-368-7652 |
| CITY/STATE/ZIP  San Francisco, CA 94109 | COUNTY San Francisco  COUNTY CODE |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| | |
|---|---|
| NAME  Keith Hulbert | |
| ADDRESS  2650 Park Tower Dr. | TELEPHONE NUMBER (Include Area Code)  (571) 226-5000 |
| CITY/STATE/ZIP  Vienna, VA 22180 | COUNTY  DFEH USE ONLY |
| NO. OF EMPLOYEES/MEMBERS (if known)  1000+ | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)  February 6, 2007 | COUNTY CODE  RESPONDENT CODE |

THE PARTICULARS ARE:

On February 6, 2007 ____ I was

- ✓ fired
- ____ laid off
- ____ demoted
- ____ harassed
- ____ genetic characteristics testing
- ____ forced to quit

- ____ denied employment
- ____ denied promotion
- ____ denied transfer
- ____ denied accommodation
- ____ impermissible non-job-related inquiry
- ____ other (specify)

- ✓ denied family or medical leave
- ____ denied pregnancy leave
- ____ denied equal pay
- ____ denied right to wear pants
- ____ denied pregnancy accommodation

by Eileen Rivera Chap, Leave Coordinator

Name of Person                          Job Title (supervisor/manager/personnel director/etc.)

because of my:

- ____ sex
- ____ age
- ____ religion
- ____ race/color

- ____ national origin/ancestry
- ____ marital status
- ____ sexual orientation
- ____ association

- ✓ physical disability
- ____ mental disability

- ____ cancer
- ____ genetic characteristic

- ✓ (Circle one) filing/ protesting/ participating in investigation trans./class for/
- ____ other (specify)

the reason given by Serco was the failure to provide documentation for the Family/CFRA Leave of Absence

Name of Person and Job Title

| | |
|---|---|
| Was because of (please state what you believe to be reason(s)) | On December 6, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On February 9, 2007, I was fired for the stated reason that my "position was eliminated." On February 27, 2007, I was notified by Serco that the Family/CFRA Leave was retroactively granted. |

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or respond a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  April 16, 2007

At  San Francisco, CA
City

COMPLAINANT'S SIGNATURE    4/16/2007

RECEIVED

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  May 10, 2007

MAY ? 2007

BY: SAN FRANCISCO DISTRICT OFFICE/STATE OF CALIFORNIA

STATE OF CALIFORNIA  STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2952
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



May 23, 2007


David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:    E200607A1065-02-prc
       Sanocki/Henry, Mike, As An Individual

Dear David S. Secrest:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 10, 2007 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

*Herbert Yarbrough*

Herbert Yarbrough
District Administrator


cc:    Case File




Eileen Rivera Chap
Leave Coordinator
Serco, Inc. DE
2650 Park Tower Dr.
Vienna, VA  22180

DFEH-200-43 (06/06)

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



May 23, 2007

David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:    E200607A1065-03-prc
       Sanocki/Carpmael, Paul, As An Individual

Dear David S. Secrest:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator


cc:    Case File


Eileen Rivera Chap
Leave Coordinator
Serco, Inc. DE
2650 Park Tower Dr.
Vienna, VA  22180

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200607 A-1065-03-prc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)    Timothy Sanocki

ADDRESS    930 Sutter St.

TELEPHONE NUMBER (INCLUDE AREA CODE)
415-368-7652

CITY/STATE/ZIP    San Francisco, CA 94109

COUNTY  San Francisco    COUNTY CODE

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME    Paul Carpmael

ADDRESS    388 Beale St

TELEPHONE NUMBER (Include Area Code)
415-904-9017

CITY/STATE/ZIP    San Francisco, CA 94105-4401

DFEH USE ONLY

NO. OF EMPLOYEES/MEMBERS (if known)    1000+

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)    February 6, 2007

COUNTY  San Francisco    COUNTY CODE

RESPONDENT CODE

THE PARTICULARS ARE:
On February 6, 2007    I was

- ✓ fired
- laid off
- demoted
- harassed
- genetic characteristics testing
- forced to quit

- denied employment
- denied promotion
- denied transfer
- denied accommodation
- impermissible non-job-related inquiry
- other (specify)

- ✓ denied family or medical leave
- denied pregnancy leave
- denied equal pay
- denied right to wear pants
- denied pregnancy accommodation

by  Eileen Rivera Chap, Leave Coordinator

Name of Person                Job Title (supervisor/manager/personnel director/etc.)

because of my:
- sex
- age
- religion
- race/color

- national origin/ancestry
- marital status
- sexual orientation
- association

- ✓ physical disability
- mental disability

- other (specify)

- cancer
- genetic characteristic

- ✓ (Check one) filing, protesting, participating in investigation/retaliation for)

the reason given by  Serco was the failure to provide documentation for the Family/CFRA Leave of Absence

Name of Person and Job Title

Was because of
(please state
what you believe
to be reason(s))

On December 6, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On February 9, 2007, I was fired for the stated reason that my "position was eliminated." On February 27, 2007, I was notified by Serco that the Family/CFRA Leave was retroactively granted.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy not to process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  April 16, 2007

At  San Francisco, CA

City

COMPLAINANT'S SIGNATURE    4/16/2007

RECEIVED

MAY 10 2007

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  May 10, 2007

BY SAN FRANCISCO DISTRICT OFFICE

STATE OF CALIFORNIA

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2952
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



May 23, 2007

David S. Secrest
A Professional Corporation
Law Offices of David S. Secrest
504 Plaza Alhambra, Ste. 205
El Granada, CA 94018

RE:    E200607A1065-04-prc
       Sanocki/Sanchez, Raquel, As An Individual

Dear David S. Secrest:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 10, 2007 because an immediate right-to-sue notice was requested.  DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator

cc:     Case File

Eileen Rivera Chap
Leave Coordinator
Serco, Inc. DE
2650 Park Tower Dr.
Vienna, VA 22180

DFEH 200-43 (06/06)

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #  E200607 A-1065-04-prc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (Indicate Mr. or Ms.)
Timothy Sanocki

ADDRESS
930 Sutter St.

TELEPHONE NUMBER (INCLUDE AREA CODE)
415-368-7852

CITY/STATE/ZIP
San Francisco, CA 94109

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

COUNTY  San Francisco   COUNTY CODE

NAME
RAQUEL SANCHEZ

TELEPHONE NUMBER (Include Area Code)
PSF-569-8971

ADDRESS
SERCO, INC., 3780 CONVOY ST. 321

CITY/STATE/ZIP
SAN DIEGO, CA. 92111-3745

DFEH USE ONLY

NO. OF EMPLOYEES/MEMBERS (if known)
1000+

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)
February 6, 2007

COUNTY  San Francisco

COUNTY CODE

RESPONDENT CODE

THE PARTICULARS ARE:
On February 6, 2007            I was

- ✓ fired
- laid off
- demoted
- harassed
- genetic characteristics testing
- forced to quit

- denied employment
- denied promotion
- denied transfer
- denied accommodation
- impermissible non-job-related inquiry
- other (specify)

- ✓ denied family or medical leave
- denied pregnancy leave
- denied equal pay
- denied right to wear pants
- denied pregnancy accommodation

by Eileen Rivera Chap, Leave Coordinator

Name of Person

Job Title (supervisor/manager/personnel director/etc.)

because of my:

- sex
- age
- religion
- race/color

- national origin/ancestry
- marital status
- sexual orientation
- association

- ✓ physical disability
- mental disability

- other (specify)

- cancer
- genetic characteristic

- ✓ (Circle one) filing protesting; participating in investigation/retaliation for)

the reason given by Serco was the failure to provide documentation for the Family/CFRA Leave of Absence

Name of Person and Job Title

Was because of
[please state
what you believe
to be the reason(s)]

On December 8, 2006 because of stress caused by work-related retaliation, which exacerbated my pre-existing thyroid condition, I applied for a Family/CFRA Leave of Absence. On December 28, 2006 the request was denied. On February 9, 2007, I was fired for the stated reason that my "position was eliminated." On February 27, 2007, I was notified by Serco that the Family/CFRA Leave was retroactively granted.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  April 16, 2007

At  San Francisco, CA

City

COMPLAINANT'S SIGNATURE

RECE:

MAY 1 0 2007





November 16, 2006

Timothy Sanocki
930 Sutter Street
San Francisco, CA 94109

Dear Timothy:

Thank you for your recent contribution of $500. The past campaign was an important one where we tried to talk about the issues that really affect the lives of the people of the Sunset-Parkside district and all San Franciscans. I'm disappointed to say the least, but I am very proud of the honorable and intelligent manner in which we conducted our campaign and all of the hard work to try to make our community a better place.

Words cannot express how much I appreciated your generous support throughout a hard-fought race. Your friendship was truly vital, and I look forward to working with you for the betterment of this fair city, as I will continue to serve my neighborhood and San Francisco at large. Again, many thanks!

Sincerely,

Doug Chan

*I'm deeply grateful for your help. We will be continuing our work in public issues, and I hope you'll stay in touch.*

1836 Noriega Street, San Francisco, CA 94122 • Phone: 415.242.3707 • Fax: 415.242.3701 • E-mail: info@electdougchan.com • www.electdougchan.com

PAID FOR BY DOUG CHAN FOR SUPERVISOR. FPPC ID#1282924

SAN FRANCISCO CA 941

17 NOV 2006 PM 1 L

Timothy Sanocki
930 Sutter Street
San Francisco, CA 94109



• DOUG •
CHAN
SUPERVISOR

1836 Noriega Street
San Francisco, CA 94122

PAID FOR BY DOUG CHAN FOR SUPERVISOR

94109+6410

## EXCUSE SLIP

**DOWNTOWN MEDICAL**
LAWRENCE BRYSON, M.D.
450 Sutter Street, Suite 1723
San Francisco, CA 94108

Telephone: (415) 362 7177

Date 12 06 06

Please Excuse Timothy Sarecki

FROM: ☒ Work   ☐ School   ☐ P.E.
☐ Other_____

DUE TO: ☐ Injury   ☒ Illness
☐ Other medical reason

From 12 06 06 to 12 12 06

Thank You,

**LAWRENCE BRYSON, M.D.**

#13131 — Medical Arts Press 1-800-328-2179

X-P

# REQUEST FOR LEAVE FORM
PLEASE PRINT, first section is required for entry


**serco**
bringing service to life

Directions for completion and submission of leave requests can be found on the next page.

Employee Name: *Timothy Samuck*

Location Name: *San Francisco*

Employee Number: *626044*

Location Code: _____

Leave Start Date: *12-6-06*

Estimated Return to Work Date: *12-12-06*

Number of Vacation Hours to Be Used: *32*

Number of Sick Hours to Be Used: *8*

Other Type of Paid Leave: _____

Number of Other Paid Leave Hours to be used: _____

Number of Hours as Unpaid Leave: _____

REASON FOR REQUEST – Please check the appropriate boxes below

☐ Vacation
☐ Jury Duty – Must attach a copy of the summons
☐ Bereavement Leave – Complete Bereavement Section on next page
☐ Military Leave** - ☐ Limited or ☐ Extended – Must attach copy of the orders
☑ Medical Reason for Self* - ☑ Continuous or ☐ Intermittent
☐ Medical Reason for Immediate Family Member* - ☐ Continuous or ☐ Intermittent
☐ Extended Unpaid Leave of Absence for Non-Medical Reasons*

Reason for Extended Unpaid Leave of Absence Request: _____

If request is for a medical reason and you are eligible for Short Term Disability Benefits any accrued vacation or sick time will be utilized during the waiting period before disability benefits begin. Will you be utilizing your accrued vacation or sick leave to offset your disability benefit? ☑ YES ☐ No

Employee Signature/Date: *12-8-06*

| | | |
|---|---|---|
| ☐ | Approve (Supervisor) | |
| ☐ | Approve (PD) | Signature/Date |
| ☐ | Approve (OCM) | Signature /Date (if required by individual contract or site location procedures) |
| ☐ | Approve (BCM) | Signature /Date (if required by individual contract or site location procedures) |
| ☐ | Approve (SBU) | Signature /Date (if required by individual contract or site location procedures) |
| ☐ | Approve (HR) | Signature/Date (if required by individual contract or site location procedures) |
| | | Signature/Date (approval required for unpaid leave requests in excess of 72 hours) |

* Employee should download a Leave of Absence Packet off of the benefits page of the intranet, http://www.ourworld-na.com
** Employee should download a Military Leave Packet off of the benefits page of the intranet, http://www.ourworld-na.com

FORM HR101 (09/06)

Page 1 of

# REQUEST FOR LEAVE FORM

**PLEASE PRINT, first section is required for entry**

serco

Bringing service to life

**Directions:**

☐ The use of this form for Vacation Requests will be determined by the employee's supervisor.

☐ Employee should complete the Request for Leave form and submit with any required documentation (all medical documentation should be forward directly to Corporate Benefits) to their supervisor or HR Representative.

☐ Supervisor/HR POC will verify form is complete and send to the appropriate level of manager for approval (see routing instructions at the bottom of this page).

☐ All medical leave of absences, extended military leave absences and unpaid leave in excess of 72 hours will require approval of Corporate Human Resources.

☐ All other leave requests should follow the procedures set forth for each individual contract or site location.

**Routing of this form:**

**Vacation Request:** Employee → Employee's Manager → Retained at work site with Management's Timekeeping Records

**All other Leave Requests:** Employee → Employee's Supervisor or HR POC → Appropriate Approver(s) → Human Resources

---

If requesting Bereavement Leave please complete the information below.

Name of Deceased: _____

Relationship of Deceased to Employee: _____

Date of Death: _____

Date, Time and Place of Funeral: _____

☐ Memorial Contribution Requested

Name of Organization: _____

Street Address: _____

City, State, Zip: _____

Phone Number: _____

If requesting leave due to employee's or immediate family member's prolonged illness or injury or due to employee's birth or adoption of a child please complete the information below.

☐ Flowers Requested

Name of Recipient: _____

Street Address: _____

City, State, Zip: _____

Phone Number: _____

---

To be completed by Employee's Manager

Charge Number for Flowers or Donation: _____

FORM HR101 (09/06)

## EXCUSE SLIP

**DOWNTOWN MEDICAL**
LAWRENCE BRYSON, M.D.
450 Sutter Street, Suite 1723
San Francisco, CA 94108

Telephone: (415) 362 7177

Date _12 . 11 . 04_

Please Excuse _TIMOTHY SANICKI_

FROM: ☒ Work    ☐ School    ☐ P.E.
☐ Other_____

DUE TO: ☐ Injury   ☒ Illness
☐ Other _Medical reasons_

From _12 . 11 . 04_ to _12 . 31 . 06_

Thank You,

_____

F13151 — Medical Arts Press   1 800 328 2179

## Meeting Agenda

**Title:** Ethics Issue
**Date/Time:** December 14th 2006 @ 1:30 p.m
**Location:** 101 California Mikenna Long Law Offices

**Attendees:** David Whiting
Timothy Sanocki          *Camilla K Fay*

**Agenda Items:**

1. Requesting Serco staff to write a personal check for political purposes (albeit later reimbursed by the company's petty cash fund).
2. Requesting Serco staff to write a personal check for political purposes (albeit later reimbursed by personal funds).
3. To prematurely discuss staff layoff's prior to applying a methodology approved by the Human Resource Department. "As I stated during the impromptu staffing plan discussion initiated by you with Raquel I feel that providing a list of employees who I "thought" should be let go prior to establishing the measures to be used in the layoff methodology was callous, unproductive and could easily be misconstrue as discriminatory".
4. Comments like HR works for the Contracts without contracts there is no HR.
5. Similar were comments at this years Contract Board Meetings during a discussion about our policy that forbid family members from working for us a discussion about Phil Rockwell's contracts came up and the fact that his wife was working for him. Rather than honor the policy the

*[handwritten notes]*

*Mr Whiting and I had asual conversation regarding the incidents (Asked me what I wanted?)*

*explained my issues w/ Paul/Mike action*

*X-6*

Intake Form

# MATRIX
Absence Management, Inc.

Claim Form for Intake #    192993
Status:    PENDING

# serco

251264

## Please verify that the following information is correct and provide us with any missing information.
*Required Fields
Estimated Medical Leave/FMLA Start Date  12/06/06

(If Medical Leave/FMLA date has changed, please enter the new date below and press submit)

Enter New Medical Leave/FMLA Start Date (mm/dd/yyyy)
(Information will be verified by your Physician)

Submit

Personal Information

*Last Name
SANOCKI

Other first name you prefer to be known as (if any)

*First Name
TIMOTHY

Date of Birth
01/29/1966

Middle Init.
P

Gender
M

*Street Address (Home)
930 SUTTER ST. APT # 603

Line 1

Line 2 (optional)

*City
SAN FRANCISCO

*State
CA

*Zip Code
94109

Home Phone Number (including area code)
415-756-7446

Home Email Address
TSANOCKI66@COMCAST.NET

Work Email Address
TIMOTHY.SANOCKI@SERCO-NA.CO

Would you like us to send email communications during your Leave? If yes, where would you like the email sent?

◯ Home Email    ◯ Work Email

Work Information
Street Address (Work)
2200 JERROLD AVE

Line 1

UNIT M

Line 2 (optional)

City
SAN FRANCISCO

*State
CA

Zip Code
94124

Work Phone Number (including area code)
415-285-5043

Location Code
SG    713

Job Title
PROJECT MANAGER

Employee ID
626044

Work Schedule

Typical Monday through Friday, 8 Hrs/day?  ⦿ Yes  ◯ No

If no, please describe your work schedule including days worked and number of hours worked per day:
MON - FRI  8AM - 6PM

Full-Time or Part-Time       Are you Exempt?
⦿ Full-time  ◯ Part-time   ⦿ Yes  ◯ No

Hours Worked Per Week

Page 1 of 4

12/13/2006 2:57:48 PM

Intake Form

*Most Recent Date of Hire      Original Date of Hire                                    40+

01/15/1997                    01/15/1997

Supervisor's Name

PAUL CARPMAEL

Supervisor's Phone Number (including area code)                Supervisor's Email Address

415-285-5043                                                   PAUL CARPMAEL@SERCO-NA.COM

Have you notified your supervisor of your absence?

( ● ) Yes    ( ) No  (If you are required to submit a 'Request for LOA' form to your Supervisor ASAP))

If yes, date supervisor was notified of your absence    12/06/06

HR Representative's Name:

RAQUEL SANCHEZ

Describe your physical activity level at work:

( ) Sedentary    ( ) Semi-Sedentary    ( ● ) Light    ( ) Moderate    ( ) Heavy    ( ) Very Heavy

Do you have more than one Employer?

( ) Yes    ( ● ) No

If yes, what is the name and address of other Employer?

Name :

Address:

Have you ever worked for Serco as a temporary employee?

( ) Yes    ( ● ) No

If yes, what is the name of the temporary agency?

Disability  Medical Leave / FMLA Information

*What type of disability are you applying for?

( ● ) Disability Leave

*Are you requesting Leave on an intermittent / part-time basis?

( ) Yes    ( ● ) No

If yes, please describe your intended work schedule including days worked and number of hours worked per day.

Reason for Leave (please explain)

EE STATES THAT HE IS SUFFERING FROM STRESS DUE TO A HOSTILE
WORK ENVIRONMENT-EE IS RECEIVING MEDICINAL TREATMENT

*What was or will be your last day of work?

12/05/06

*What was the first date you became or will become unable to perform the duties of your regular work?

12/06/06         (This includes weekends, holidays and days off)

*Have you returned to work?

( ) Yes    If yes, on what date did you return to work?

12/13/2006 2:57:48 PM

Intake Form

○ No    If no, what is your estimated return to work date?  12/21/06

Was your disability caused by work?

● Yes    ○ No                          If yes, have you filed a Workers' Compensation Claim?

                                        ○ Yes    ● No

Is your disability due to an accident?          If yes, date the WC Claim was filed?

        ○ Yes    If yes, what was the date of the accident?
        ● No

Was your accident due to the acts or omissions of another party?

        ○ Yes    ● No

If yes, are you receiving any type of income due to the accident?    ○ Yes    ○ No

If you expect to receive ANY income, from ANY source during your leave, please indicate below:

        □ Wages, Salary, Separation Pay

        □ State Disability

        □ Workers' Compensation

        □ Group Disability

        □ Other, (ie. accident)

Source of Other Income

Have you ever had a previous disability with Serco?

        ○ Yes    ● No

If yes, what was the start date of the disability?

Have you taken a Leave within the past 12 months?

        ○ Yes    ● No

Health Care Provider Information --

Physician's Last Name

LAW                                        Physician's First Name

Medical Specialty

INTERNAL MEDICINE

Street Address

450 SUTTER ST                              Line 1

                                           Line 2 (optional)

City                                       State    Zip Code

SAN FRANCISCO                              CA       94108

Physician's Phone Number (including area code)

415-362-7177                               Physician's Fax Number (including area code)

                                           415-362-8309

Date of last visit to your Physician

12/11/06

12/13/2006 2:57:48 PM

Intake Form

Name of your Health Insurance Provider (Cigna, Aetna, HMO, PPO)

CARE FIRST

If you are with Kaiser, your Medical Record's number is required:

Has an "Authorization to Release Information" form been given to your Physician?

○ Yes  ◉ No

The person completing this form is the employee requesting the Leave of Absence?

○ Yes  ◉ No

If no, what is your relationship to the employee?     IC TM 12/13/06

If no, what is your full name?     EE CALLED IN CLAIM

Is there any additional information you would like to add regarding your claim?

SUBMITTED: 12/13/06 COMPLETED: 12/13/06 IC SH

Please answer the following Questions:

FOR ALL LEAVE TYPES FILED. In order to determine what state family leave laws apply to you, please answer the following questions. Do you work out of your home or car exclusively?     NA

If so, do you go into any local company office or affiliate of your company at all during the course of the year?     NA

If yes, what office do you go to? (City/State)     NA

If yes, how many times per year and for what business need?     NA

Are you a Union employee?     NA

If you are a CA employee currently on a "lack of work status", what was the first day with no work available or "no tasking"?     NA

## Please Acknowledge the following Statements:

☑ IF FILING FOR FMLA. While on FMLA, the Serco policy allows you to use any accrued vacation and sick time available to you. Record the hours on your timesheet or report them to your manager. Please contact your manager for your current leave balance if you wish to receive compensation during your FMLA leave

**By submitting this Claim Form, I certify that the foregoing statements are true and correct.**

Next    Validate and Submit your Claim Form

Save    Save information so that you can Edit and Submit Form at a later date

Cancel    Cancel and abandon the filing process

Next        Save        Print        Cancel

12/13/2006 2:57:48 PM



**MATRIX**
Absence Management, Inc.

*a DELPHI company*

# serco

Eileen Chap
*Leave Coordinator*

7 Skyline Drive, Suite 275, Hawthorne, NY 10532
Phone (914) 784-0000 • 877- 315-9838 • Fax (914) 347-4834
eileen.chap@matrixco.com

December 14, 2006

Timothy Sanocki
930 Sutter St. Apt# 603
San Francisco, CA 94109

Dear Mr. Sanocki:

Matrix, on behalf of SERCO has received notification of your request for a leave under federal and/or state family leave laws. Some states have family leave laws that may differ. If your state has family leave laws, they are attached. Please reference your specific state leave laws. You have requested this leave beginning on 12/06/2006 and expect it to continue through on or about 12/20/2006. If you need to change these dates, contact Matrix. Your eligibility has been reviewed and you are eligible for the following policies:

Family and Medical Leave Act of 1993 (Government Mandated) - 12 Weeks starting entitlement
California Family Rights Act (Government Mandated) - 12 Weeks starting entitlement
You will be required to furnish certification in order to evaluate your request. It is important that this is completed and returned to Matrix timely. You have fifteen (15) days from the date on this letter (December 14, 2006) to fax or mail the certification to Matrix. Your health care provider must complete the Certification of Health Care Provider. As a reminder, Matrix has faxed this certification to your health care provider. The form is included in your disability packet.

Matrix Absence Management, Inc.
7 Skyline Drive, Suite 275
Hawthorne, NY 10532
Confidential Fax: (914) 347-4834
Phone: (877) 315-9838

If the Certification of Health Care Provider is not received within 15 days, or does not support your request for leave, your request for family leave will not be approved. If the Certification of Health Care Provider is not completed appropriately, Matrix may return it to you with instructions to have it completed so that Matrix can evaluate your leave request.

Because your leave is for your own illness, you may be eligible for disability benefits upon which you will be notified.

If your leave under family leave law is approved, you have a right under family leave for up to 12 weeks of unpaid leave in a 12-month period. Also, your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work and you must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from leave. If you do not return to work following family leave for a reason other than: (1) the continuation, recurrence, or onset of a serious health condition which would entitle you to family leave; or (2) other circumstances beyond your control, you may be required to reimburse SERCO for their share of health insurance premiums paid on your behalf during your family leave. If approved, your requested leave will be counted against your annual federal and/or state family leave entitlement.

While on FMLA, the SERCO policy allows you to use any accrued vacation and sick time available to you. Record the hours on your timesheet or report them to your manager. Please contact your manager for your current leave balance if you wish to receive compensation during our FMLA leave.

If you normally pay a portion of the premiums for your health insurance, these payments will continue

during the period of family leave while receiving a pay check. You are responsible for making payments for your share of premiums if your leave is unpaid. SERCO will notify you regarding premium payments.

You have a minimum 30-day grace period in which to make premium payments. If payment is not made timely, your group health insurance may be cancelled, provided SERCO notifies you in writing at least 15 days before the date that your health coverage will lapse, or, at their option, SERCO may pay your share of the premiums during family leave, and recover these payments from you upon your return to work.

You will be required to forward a fitness-for-duty certificate to your manager and Matrix prior to your return to active duty. If such certification is required but not received, your return to work may be delayed until certification is provided.

While on leave you may be required to furnish Matrix with periodic reports at least every 30 days of your status and intent to return to work. If the circumstances of your leave change and you are able to return to work earlier than the date indicated in this letter, you will be required to notify your manager and Matrix at least two work days prior to the date you intend to report for work. In the event that your leave request is to extend, you must forward the Certification of Health Care Provider regarding these changes to Matrix at least two (2) business days prior to the effective date of any such changes.

Enclosed for your review is information containing your rights and obligations under federal and/or state family leave laws, and SERCO policy.

While you are not at work, you need to provide a telephone number where your manager and Matrix can reach you. It is imperative that this contact number be kept current throughout your leave period.

If you have questions, you may access your claim at www.matrixaccounts.com. Click on "Create an Account" to register, obtain an ID and password to view your claim and e-mail your Claim Administrator. For disability questions you may also contact your Claims Administrator, (877) 315-9838. For family leave questions you may contact your Leave Coordinator at (877) 315-9838 ext 234. If you have questions regarding your benefits, contact SERCO's Human Resource/Disability Unit at 571-226-5023. Sincerely,

*Eileen Rivera Chap*

Eileen Chap, Leave Coordinator, ext. 253
Matrix Absence Management, Inc. on behalf of
Human Resources/Disability Unit, SERCO

Attachments:
Rights and Obligations Federal and/or State (if applicable)
Authorization for Release of Health Information (must be returned to Matrix) Self Addressed Stamped Envelope



December 28, 2006

Timothy Sanocki
930 Sutter St. Apt# 603
San Francisco, CA 94109

Dear Mr. Sanocki:

Matrix on behalf of SERCO has received notification that you are requesting a leave for your own health condition under federal and/or state family leave acts. You have requested your leave to begin on 12/06/2006 and expect it to continue until on or about 12/20/2006.

Your rights and obligations under federal and/or state family leave laws are summarized in the enclosed attachment(s). Based on the requirements for eligibility outlined under the rights and obligation of the family leave, your family leave is not approved because:

No documentation was returned to certify the leave

This denial pertains only to the family leave portion of your leave and does not affect any other benefits you may be eligible for.

If your leave has been denied based on family leave criteria for yourself, should your health care provider extend your leave beyond SERCO's disability waiting period, contact Matrix Event Reporting Center at 1-877-202-0055.

If you have additional information to consider please forward the information to Matrix for review. If you have disability questions you may contact a Claims Administrator, (877) 315-9838. For family leave questions you may contact a Leave Coordinator at (877) 315-9838 . If you have questions regarding benefits, contact SERCO's Human Resource/Disability Unit at 571-226-5023.

Sincerely,

Eileen Rivera Chap
Eileen Chap, Leave Coordinator, ext. 353
Matrix Absence Management, Inc. on behalf of
Human Resources/Disability Unit, SERCO

Attachments:
Rights and Obligations: Federal and/or State (if applicable)

January 22, 2007

Quality Review Unit
Reliance Standard Life Insurance Company
c/o Matrix Absence Management
7 Skyline Drive, Suite 275
Hawthorne, NY 10532

To Whom It May Concern:

As per instructions specified in the Claim Review Procedure I am providing written request for you to review my request for FMLA Leave. I have identified miscommunication located within the Matrix Intake Statement that may impact the decision letter dated December 29, 2006 and I would like to clarify the accuracy of information provided.

- On Page 2 of 4 the Reason for Leave (please explain) should read:

    Concerned for my health that increased exposure to stress in the workplace was exacerbating a pre existing health condition that may lead to further health complications.

- On Page 3 of 4 was your disability caused by work? The answer should read:

    Yes and No as I did not feel qualified to formulate a determination to the question.

Respectfully,

Timothy Sanocki

**serco**

February 6, 2007

Timothy Sanocki
930 Sutter Street Apt. #603
San Francisco, CA 94109

Serco Inc.
3760 Convoy Street
Suite 321
San Diego, CA 92111
USA

t (858) 569-8979
f (858) 569-8958
www.serco.com

Dear Tim:

You have requested time off for a medical reason for self. In response to this information, Serco Inc. ("Serco" or "the Company") forwarded to you a copy of Serco's Family and Medical Leave Packet and forms for requesting a leave under that policy. Our records indicate that although you have applied for the leave, to date you have not provided documentation to certify the leave. Since you did not provide the documentation, Serco's third party administrator, Matrix Absence Management Inc., sent you a denial of benefits notice on December 28, 2006.

Due to realignments of business responsibilities within Serco, we had made the decision to eliminate the Contract Manager position in San Francisco shortly before you announced your leave in early December. Because you have now exhausted your paid leave, we need to move forward with the elimination of the Contract Manager Position and formal separation of your employment with Serco. Your status as a Serco employee will terminate on February 9, 2007.

Information concerning your benefits, including the continuation of any health coverage under COBRA, will be mailed to you under separate cover. Questions concerning your employment should be directed to the Department of Human Resources.

If you are interested in pursuing other open positions within the company, we encourage you to apply. All open positions are posted on our website at http://www.serco-na.com/ and we encourage you to apply for positions that interest you. As always, we are committed to hiring the most qualified candidates for any opening, but appropriate consideration will be given for past performance with the company.

We are pleased to offer you Severance Pay; you will receive a Severance Agreement under separate cover. This Severance payment satisfies the terms of our Severance Plan and your Employment Agreement dated October 3, 2000. In order to receive Severance Pay, please return the Severance Agreement within 21 days of receipt. You are encouraged to consult with an attorney of your choice regarding the legal implications of the Severance Agreement.

Should you have any questions or concerns, feel free to contact me.

Sincerely,

Raquel Sanchez
Human Resources Generalist

**Sanchez, Raquel**

| | |
|---|---|
| **From:** | Sanchez, Raquel |
| **Sent:** | Wednesday, February 07, 2007 9:08 AM |
| **To:** | Sanocki, Tim |
| **Cc:** | Hulbert, Keith |
| **Subject:** | RE: 02-06-07 Conversation with Keith Hulbert |

Tim,

There is a letter in route to you confirming your conversation with Keith; you should receive it in the next day or so.

If you are interested in pursuing other open positions within the company, we encourage you to apply. All open positions are posted on our website at http://www.serco-na.com/ and we encourage you to apply for positions that interest you. As always, we are committed to hiring the most qualified candidates for any opening, but appropriate consideration will be given for past performance with the company. I'm not sure which positions you may be interested in, so your best solution is to browse the current openings on Serco's website. You can browse the listings by Job Category and/or geographical area. For the remainder of this week you can also look for openings on our Intranet which includes openings that are open only to internal candidates (current employees). If you find a position you are interested in (on the Intranet this week or on the Internet thereafter) you must apply online while the position is open, for consideration. If you have questions about the application process let me know, I'll be happy to walk you through it.

As for the results of the Ethics complaint, I have a message in to Rich Gilligan as I am not familiar with his normal process. Once I hear back from Rich, I will get back to you on this.

If you have additional questions feel free to give me a call or send me an email.

Take care,

Raquel Sanchez
Human Resources Generalist
**Serco Inc.**
ph. 858.715.6234
fx. 858.569.6719
Raquel.Sanchez@serco-na.com

This e-mail may contain confidential and/or privileged material; it is for the intended addressee(s) only. If you are not the named addressee, you must not use, retain or disclose such information. Serco cannot guarantee that the e-mail or any attachments are free from viruses. Serco is not responsible for any changes made to this e-mail after transmission.

---

**From:** Sanocki, Tim
**Sent:** Tuesday, February 06, 2007 4:26 PM
**To:** Sanchez, Raquel
**Cc:** Keith Hulbert
**Subject:** 02-06-07 Conversation with Keith Hulbert

Raquel,

I just finished a conversation with Keith who explained that he is reorganizing responsibilities in San Francisco and as a result of this restructuring has collapsed my responsibilities distributing it across current staff and therefore eliminating my position and explained that a letter is presently en-route from the Human Resource Department. He further explained that you and he are available to discuss other opportunities with me

2/7/2007

or mentioned that I could accept a severance agreement that has been prepared for my consideration.

Can you please provide me a list of the opportunities the company is offering me to include the job title, role and responsibilities, geographical location and remuneration package. I assume the correspondence he referenced will include more detail of the severance package.

Also, can you please ask Rich Gilligan to provide me the result of the ethics complaint I reported December 6th 2006 as I have yet to receive official notice from the company on the actions taken. Rich may have tried to reach me on my cell number but may be unaware of the fact that Serco has requested I return company equipment.

Respectfully,


Timothy Sanocki

2/7/2007



February 26, 2007

Timothy Sanocki
930 Sutter St. Apt# 603
San Francisco, CA 94109

Dear Mr. Sanocki:

This letter supersedes the denial letter sent to you on 12/28/06.

Matrix has completed a review of the Certification of Health Care Provider for your own health condition. Your FAMILY LEAVE has been approved from 12/06/2006 through 02/01/2007 under the following policies:

California Family Rights Act: Approved from 12/06/2006 to 02/01/2007
Family and Medical Leave Act of 1993: Approved from 12/06/2006 to 02/01/2007

Your certification is valid through 02/01/2007.

Your time off will be applied against your federal and/or state family leave. In the event that your leave request changes, you must forward the Certification of Health Care Provider regarding these changes to Matrix at least two business days prior to the effective date of any such changes.

Matrix Absence Management, Inc.
7 Skyline Drive, Suite 275
Hawthorne, NY 10532
Confidential Fax: (914) 347-4834
Phone: (877) 315-9838

If you return to work within your federal and/or state family leave entitlement period, you will be reinstated to the former or equivalent position, unless SERCO is unable to do so for reasons unrelated to the leave.

While you are not at work, you need to provide a phone number where your manager and Matrix can reach you. It is imperative that this contact number be kept current throughout your leave period.

If you have questions, you may access your claim at www.matrixeaccounts.com. Click on "Create an Account" to register, obtain an ID and password to view your claim and e-mail your Claim Administrator. For disability questions you may also contact your Claims Administrator, (877) 315-9838. For family leave questions you may contact your Leave Coordinator at (877) 315-9838 ext 234.If you have questions regarding your benefits, contact SERCO's Human Resource/Disability Unit at 571-226-5023

Sincerely,

Eileen Rivera

Eileen Rivera, Leave Coordinator, ext. 253
Matrix Absence Management, Inc. on behalf of
Human Resources/Disability Unit, SERCO





February 27, 2007

Serco Inc.
3760 Convoy Street
Suite 321
San Diego, CA 92111
USA

t (858) 569-8979
f (858) 569 8958
www.serco.com

Timothy Sanocki
930 Sutter Street Apt. #603
San Francisco, CA 94109

Dear Tim:

Enclosed is a letter from Matrix Absence Management Inc., stating that they have reversed their initial denial of your request for Family and Medical Leave dated December 28, 2006. We apologize for the confusion Matrix may have caused you as it seems there was some miscommunication between their Short Term Disability and Family Medical Leave departments.

Although Matrix has now reversed the denial and in turn approved your FML request through February 1, 2007, this does not change the decision Serco had previously made to eliminate the Contract Manager position in San Francisco.

Should you have any questions or concerns, feel free to contact me.

Sincerely,

Raquel Sanchez
Human Resources Generalist

Cc:    Dorothy Harrington
       Dan Beale

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | CALIFORNIA STATE BAR NO | FOR COURT USE ONLY |
|---|---|---|---|

David S. Secrest, Esq.                    142299
Law Offices of David S. Secrest, APC
PO Box 1029, 504 Plaza Alhambra, Suite 205
El Granada, CA 94018-1029
TELEPHONE NO. (650) 726-7461    FAX NO. (650) 726-7471
ATTORNEY FOR (Name): Plaintiff, Timothy Sanocki

**FILED**
San Francisco County Superior Court
JUL 3 0 2007
GORDON PARK-LI, Clerk
BY:
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street, Room 103
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

CASE NAME: Timothy Sanocki vs. Serco Group PLC, Serco Inc.
DE, Paul Carpmael, Raquel Sanchez & DOES 1-50

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder    Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC 07- 465608   JUDGE  DEPT |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties
 b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
 c. [ ] Substantial amount of documentary evidence
 d. [ ] Large number of witnesses
 e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or in a federal court
 f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action (specify): 5 causes of action.
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

**BY FAX**

Date: July 30, 2007

David S. Secrest
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
MacForms (509) 535-4382

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Sanocki 0171

# EXHIBIT B



FILED
San Francisco County Superior Court

AUG 0 2007

GORDON PARK-LI, Clerk
BY: _____ Dep't. Clerk

1  Law Offices of David S. Secrest
   A Professional Corporation
2  David S. Secrest, Esq. [State Bar #142299]
   504 Plaza Alhambra, Suite 201
3  P. O. Box 1029
   El Granada, CA 94018-1029
4  Tel: 650-726-7461
   Fax: 650-726-7471
5  Attorney for Plaintiff
   Timothy Sanocki
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              CITY AND COUNTY OF SAN FRANCISCO - UNLIMITED

10

11 TIMOTHY SANOCKI,                           Case No. CGC-07-465608

12                Plaintiff,                  FIRST AMENDED COMPLAINT FOR
                                              DAMAGES AND INJUNCTIVE RELIEF:
13 vs.
                                              1.      Wrongful Termination in Violation of
14 SERCO GROUP PLC, SERCO, INC. DE.           Public Policy [Cal.Gov.Code §81002- Political
   PAUL CARPMAEL, an individual,              Reform Act of 1974; CFRA- California Govt.
15 RAQUEL SANCHEZ, an individual,             Code §12915.2(a)];
   KEITH HULBERT, an individual, MIKE         2.      Violation of Rights under the California
16 HENRY, an individual, and DOES 1-50,       Family Rights Act ("CFRA") [California Govt.
   inclusive,                                 Code §12945.2(a)];
17                                            3.      Discrimination and Discharge in
                                              Violation of the CFRA [California Govt. Code
18                Defendants.                 §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7];
                                              4.      Retaliation in Violation of the CFRA
19                                            [California Govt. Code §§12940(h), 12945.2(l); 2
                                              Cal.C.Regs. §7297.7]; and
20                                            5.      Intentional Infliction of Emotional
                                              Distress
21

22
                                                      BY FAX
23              DEMAND FOR JURY TRIAL

24      Plaintiff hereby demands a jury trial.

25      Plaintiff TIMOTHY SANOCKI, by and through his attorneys, hereby alleges, on

26 information and belief, as follows:

27                      THE PARTIES

28 1.      Plaintiff TIMOTHY SANOCKI ("Plaintiff") is an individual and resides in the City of San

Law Offices of
David S. Secrest
El Granada, CA

-1-

First Amended Complaint for Damages: Timothy Sanocki v. Serco Group PLC, et al.
San Francisco Superior Court No. CGC-07-465608

1  Francisco, County of San Francisco, California.  At all times pertinent, Plaintiff was a long-term

2  employee of Defendant SERCO GROUP PLC, as well as SERCO, INC. DE, a wholly owned

3  subsidiary of SERCO GROUP PLC.

4  2.      Plaintiff was, at all times material herein, an "employee," as defined by California

5  Government Code Section ("Govt. Code §") 12926(c), part of the California Fair Employment and

6  Housing Act ("FEHA," Government Code Sections 12900 et seq.) and within the definition of

7  Title VII of the Civil Rights Act of 1964, as amended ["Title VII", 42 U.S.C. 2000(e)].

8  3.      Defendant SERCO GROUP PLC is a foreign corporation with corporate headquarters

9  located in the London suburb of Richmond.[1]  SERCO GROUP PLC was, at all times pertinent,

10  qualified to do business in the State of California, and did business in the State of California,

11  County of San Francisco.  SERCO GROUP PLC is a Business Services company based in the

12  London suburb of Richmond.  It is listed on the London Stock Exchange and is a constituent of the

13  FTSE 250 Index.  SERCO GROUP PLC was founded in 1929 as a United Kingdom division of

14  the Radio Corporation of America and initially provided services to the cinema industry.  It

15  changed its name to SERCO in 1987 and has been a stock exchange listed company since 1988.

16  4.      SERCO, INC. DE is the name on the paycheck given to Plaintiff from SERCO GROUP

17  PLC.  It is believed that SERCO, INC. DE is, in actuality, a name used by SERCO GROUP PLC

18  for its North American operating unit,[2] which is located in San Diego, CA, at 3760 Convoy Street,

19  and has its North American Corporate Headquarters at 2650 Park Tower Drive, Suite 800, Vienna,

20  VA 22180.

21  5.      SERCO GROUP PLC and SERCO, INC. DE were, at all pertinent times, the joint

22  employers of Plaintiff.

23  6.      Plaintiff is informed and believes, and thereon alleges, that Defendants SERCO GROUP

24  PLC and SERCO, INC. DE are foreign corporations that actively solicit and do business in the

25  Sate of California, County of San Francisco, and are incorporated in the State of New Jersey.

26  7.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned,

27  _____

[1] http://www.serco.com

28  [2] http://www.serco-na.com

Law Offices of
David S. Secrest
El Granada, CA

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1    and continuing to the present, Defendants SERCO GROUP PLC and SERCO, INC. DE have

2    operated, and currently operate, as a single business enterprise.  Though such Defendants have

3    multiple corporate, entity, and individual personalities, there is but one enterprise and this

4    enterprise has been so handled that it should respond, as a whole, for the acts committed by

5    SERCO GROUP PLC and SERCO, INC. DE, as alleged herein.  Each corporation, individual and

6    entity has been, and is, merely an instrument and conduit for the others in the prosecution of a

7    single business venture. There is such a unity of interest and ownership among these Defendants

8    that the separate personalities of the corporations, individuals and entities no longer exist. If the

9    acts of SERCO GROUP PLC and SERCO, INC. DE are treated as those of one or both of these

10   corporations alone, an inequitable result will follow in that these corporate defendant(s) may have

11   insufficient assets to respond to the ultimate award of compensatory damages, costs, attorneys fees

12   and punitive damages entered in this case. Further, an award of punitive damages against one or

13   more of the corporate defendants alone will not accurately reflect the amount necessary for

14   punishment of the entire business enterprise conducted by SERCO GROUP PLC and SERCO,

15   INC. DE.  SERCO GROUP PLC and SERCO, INC. DE, are therefore referred to hereinafter

16   jointly as "SERCO."

17   8.      Defendant PAUL CARPMAEL ("CARPMAEL") was and is at all times relevant herein a

18   manager employed by SERCO, and acted as SERCO's Project Director, and as Plaintiff's

19   Supervisor.  CARPMAEL was at all times relevant herein a resident of the County of San

20   Francisco, State of California. CARPMAEL is personally liable for his acts alleged herein below

21   under California Government Code Sections 12926(r), 12940(h) and 12940(j) and related laws.

22   9.      Defendant RAQUEL SANCHEZ ("SANCHEZ") was and is at all times relevant herein a

23   manager employed by SERCO, and acted as SERCO's Human Resource Generalist. SANCHEZ

24   was at all times relevant herein a resident of the County of San Diego, State of California.

25   SANCHEZ is personally liable for her acts alleged herein below under California Government

26   Code Sections 12926(r), 12940(h) and 12940(j) and related laws.

27   10.     Defendant KEITH HULBERT ("HULBERT") was and is at all times relevant herein a

28   manager employed by SERCO, and acted as SERCO's Director of the Surface Transportation

Law Offices of
David S. Secrest
El Granada, CA

-3-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1  Division.  HULBERT was at all times relevant herein a resident of the County of Fairfax, State of

2  Virginia.  HULBERT is personally liable for his acts alleged herein below under California

3  Government Code Sections 12926(r), 12940(h) and 12940(j) and related laws.

4  11.    Defendant MIKE HENRY ("HENRY") was and is at all times relevant herein a manager

5  employed by SERCO, and acted as SERCO's Business Improvement and Development Manager

6  for the Transportation Division.  HENRY was at all times relevant herein a resident of the County

7  of Camden, State of New Jersey.  HENRY is personally liable for his acts alleged herein below

8  under California Government Code Sections 12926(r), 12940(h) and 12940(j) and related laws.  All

9  the conduct complained of herein occurred in the County of San Francisco.

10  12.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

11  50, inclusive, and therefore sues these defendants by such fictitious names and capacities when

12  ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously

13  named defendant is responsible in some manner for the occurrences herein alleged, and that

14  plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

15  13.    Plaintiff is informed and believes and thereupon alleges that, at all times material herein,

16  each of the defendants was the agent, employee and/or working in concert with his co- defendants

17  and was acting within the course and scope of such agency, employment and/or concerted activity.

18  To the extent that certain defendants perpetrated certain acts and omissions, the remaining

19  defendant or defendants confirmed and ratified said acts and omissions.

20  14.    Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each

21  defendant was completely dominated and controlled by his co-defendant and each was the alter

22  ego of the other.

23  15.    Whenever and wherever reference is made in this complaint to any act by a defendant or

24  defendants, such allegations and reference shall also be deemed to mean the acts and failures to act

25  of each defendant acting individually, jointly, and severally.

26  16.    Whenever and wherever reference is made to individuals who are not named as plaintiff or

27  defendants in this complaint but were employees/agents of Defendant SERCO, such individuals at

28  all relevant times acted on behalf of defendant SERCO within the scope of their employment.

Law Offices of
David S. Secrest
El Granada, CA

-4-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

**JURISDICTION AND VENUE**

17.    This Court has jurisdiction over Plaintiff's claims pursuant to Cal.Gov.Code §12945.2(a); 2 Cal.C.Regs. §7297.7; and Cal.Gov.Code §81002- Political Reform Act of 1974.

18.    Venue is proper based on Defendant SERCO's status as a foreign corporation that has not designated a California principal place of business with the California Secretary of State. This fact means that suit may be filed in any county in the State.

19.    At all times pertinent, Plaintiff performed the functions of his employment for SERCO in San Francisco County, California. Specifically, Plaintiff was employed by SERCO as a Contract Manager from January 1997 to his termination of employment, as more fully alleged below, on February 6, 2007.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

20.    On May 10, 2007, Plaintiff filed complaints against the defendants named in this Complaint with the Department of Fair Employment and Housing ("DFEH"). A true and correct copy of same is attached hereto as **Ex. "A,"** and is incorporated herein by reference. On May 23, 2007, Plaintiff received Right-to-Sue Notices from the DFEH as to the defendants named in this Complaint. True and correct copies of same are also attached hereto as **Ex. "A,"** and incorporated herein by reference.

21.    Plaintiff has exhausted all of the administrative remedies required by the California Fair Employment and Housing Act §12900 *et seq.*

**FACTS COMMON TO ALL CAUSES OF ACTION**

22.    At all times pertinent, Plaintiff performed the functions of his employment for SERCO in San Francisco County, California. Specifically, Plaintiff was employed by SERCO as a Contract Manager from January 1997 to his termination of employment, as more fully alleged below, on February 6, 2007. Plaintiff's function was to work with the City and County of San Francisco's Municipal Transportation Authority (formerly Department of Parking and Transportation), assuming full responsibility for the day-to-day operations of a contractual agreement between the City and County of San Francisco and SERCO (Contract #BPPK02000033) ("the Contract"). My role as defined by agreement was to act as Contract Manager. At all times pertinent, Plaintiff

Law Offices of
David S. Secrest
El Granada, CA

-5-

1  fulfilled his duties and responsibilities in exemplary fashion.

2  23.    In July 2006, SERCO informally announced its decision to appoint CARPMAEL, former

3  Project Director, as Capture Manager for the San Francisco Parking Ticket Processing Request for

4  Proposal. Shortly after CARPMAEL's assumption of this position, his attitude and demeanor

5  towards Plaintiff became demanding and hostile. CARPMAEL immediately began pressuring

6  Plaintiff for information that was unrelated to the Ticket Processing Request for Proposal and

7  repeatedly disrespected Plaintiff before my staff.  In addition to directing hostility toward

8  Plaintiff, Plaintiff is informed and believes that during the first 90 days of CARPMAEL's

9  assumption of this position, CARPMAEL was performing impromptu and clandestine auditing of

10  the Contract without officially informing the Contract Manger of the purpose/reason for the audit.

11  24.    On October 27, 2006, CARPMAEL instructed Plaintiff and two other SERCO employees

12  (Alexiy Sukhenko and Andrew Kang) to provide CARPMAEL with personal checks in the form of

13  campaign contributions to prospective politicians.  Plaintiff did as he was instructed, but this

14  request caused him great concern because it appeared to be illegal and unethical in multiple

15  respects. Plaintiff believed the incident may have constituted a violation of Federal accounting

16  practices established by DCAA, and could affect SERCO's Federal Sector business. An important

17  function of Plaintiff's duties was to verify appropriate accounting procedures and documentation

18  with respect the day-to-day operations of SERCO, according to SERCO policies and procedures;

19  and Generally Accepted Accounting Principles ("GAAP").[3]

20  25.    Despite this concern, as instructed, Plaintiff made out two (2) $250.00 checks to "Doug

21  Chan for Supervisor."  Carbon copies of the true and correct imprints of Plaintiff's check register

22  are attached hereto as Ex. "B." CARPMAEL tried to reassure Plaintiff that, "according to the

23  lobbyist" it was "common practice."

24  26.    In addition to unethical/illegal campaign contributions, CARPMAEL then instructed that

25  Plaintiff "run the expenditure thru company petty cash."

26

27  _____
[3] Generally accepted accounting principles ("GAAP") are the accounting rules used to prepare financial statements for
28  publicly traded companies and many private companies in the United States. GAAP constitutes firm and substantial
    public policies that inure to the benefit of the public.

Law Offices of
David S. Secrest
El Granada, CA

-6-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

27.    On or about November 18, 2006, Plaintiff received a "thank you" for the previously mentioned contribution form the campaign for "Doug Chan for Supervisor," a true and correct copy of which is attached hereto as **Ex. "C."**

28.    During numerous discussions in November 2006, Plaintiff reported to SERCO Vice-President Keith Hulbert; SERCO Human Resource Generalist SANCHEZ, SERCO; SERCO Finance Manager Allen Widdowson; and other Human Resources staff and management staff; that CARPMAEL was placing the company at risk by asking staff to write personal checks so he could, in turn, make unethical/illegal political campaign contributions to local politicians. Plaintiff's reports seemed, to Plaintiff, to be ignored by SERCO.

29.    On Monday December 4-5, 2006 SANCHEZ visited the SERCO's San Francisco contract site to address several outstanding Human Resource issues (as described in the previous e-mails to Keith Hulbert). In preparation for the meeting, Plaintiff intended to address all concerns he considered unresolved and/or pending. SANCHEZ spent most of her time in discussion with CARPMAEL.

30.    On December 5, 2006, a meeting was scheduled to be addressed was an unresolved employee relations issue. The meeting was chaired by SANCHEZ and was established with guidelines that a commitment from both employees was required and that the purpose of the meeting was to identify a solution for moving forward; a timeline of 30 minutes was set aside to do so. After approximately 40 minutes of repartee from both employees Plaintiff interrupted the conversation to explain that he had become ill due to extreme stress. The conversation continued for another 5 minutes or so and then SANCHEZ suggested that the discussion be tabled for a later date, and the both staff left the room.

31.    Plaintiff then made a formal complaint to the Serco Ethics Hotline to report all of the incidents that he felt were unethical, including CARPMAEL's unethical/illegal political campaign contributions to local politicians. Plaintiff contacted SERCO Executive Rich Gilligan and explained that he had several incidents to discuss with him. Plaintiff reported the fact that CARPMAEL had asked staff to write checks from their personal bank so that he could attend political functions and make financial contributions on behalf of SERCO. Plaintiff reported the

Law Offices of
David S. Secrest
El Granada, CA

-7-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1  fact that he was instructed by CARPMAEL to run the costs thru SERCO's petty cash accounts

2  (and in one instance was given a fuel receipt to be used in replace of one of the reimbursements).

3  Plaintiff reported the fact that he thought CARPMAEL's unethical/illegal political campaign

4  contributions was creating a hostile work environment.  Gilligan replied that he did not want to

5  confuse the issues human resource with ethic issues.

6  32.     As a result of the above-alleged conduct, including the unethical/illegal activities alleged

7  above, Plaintiff was caused to become seriously ill, due to stress, and due to the exacerbation of his

8  pre-existing thyroid medical condition, which required Plaintiff to take a medical leave of absence

9  ("LOA") from SERCO.  Plaintiff submitted medical documentation for his LOA from his treating

10  health care provider on December 6, 2006, a true and correct copy of which is attached hereto as

11  **Ex. "D."**  On December 8, 2006, Plaintiff submitted a formal request fro LOA, a true and correct

12  copy of which is attached hereto as **Ex. "E."**  Plaintiff submitted further medical documentation

13  for his LOA from his treating health care provider on December 11, 2006, a true and correct copy

14  of which is attached hereto as **Ex. "F."**

15  33.     On or about December 14, 2006, Plaintiff attended a formal meeting regarding his ethics

16  complaint regarding CARPMAEL's unethical/illegal political campaign contributions at the San

17  Francisco offices of McKenna Long & Aldridge LLP, specifically attorney Camille K. Fong, and

18  at which SERCO executive David Whiting attended.  A true and correct copy of the written

19  agenda  is for the meeting is attached hereto as **Ex. "G."**

20  34.     On or about December 13, 2006, Plaintiff submitted a further application for his

21  FMLA/CFRA LOA, a true and correct copy of which is attached hereto as **Ex. "H."**  On or about

22  December 14, 2006, Plaintiff received from SERCO an acknowledgment of receipt of same, a true

23  and correct copy of which is attached hereto as **Ex. "I."**

24  35.     While on LOA from SERCO, after reporting the incident to Serco Ethics Representative

25  Richard Gilligan, Plaintiff received several follow-up phone calls reassuring his that the incident

26  was being taken very seriously and that a committee had been appointed to review the case and the

27  outcome was pending.

28  36.     On or about December 28, 2006, Plaintiff received from SERCO a denial of Plaintiff's

Law Offices of
David S. Secrest
El Granada, CA

-8-

1    request for FMLA/CFRA LOA, a true and correct copy of which is attached hereto as **Ex. "J."**

2    Erroneously, the bogus rejection falsely asserted that the basis for the illegal denial was: "No

3    documentation was returned to certify the leave."

4    37.    On or about January 22, 2007, Plaintiff transmitted to SERCO a request for a review of

5    SERCO's denial of his FMLA/CFRA LOA, a true and correct copy of which is attached hereto as

6    **Ex. "K."**

7    38.    On February 6, 2007, in direct response to Plaintiff's request for a review of SERCO's

8    denial of his FMLA/CFRA LOA, SANCHEZ, acting on her own behalf and on behalf of SERCO,

9    sent to Plaintiff a notice of Plaintiff's termination from employment with SERCO, in which she

10    reiterated the false assertions previously transmitted regarding the bogus reasons for the illegal

11    denial of Plaintiff's LOA, a true and correct copy of which is attached hereto as **Ex. "L."**

12    39.    The next day, SANCHEZ, acting on her own behalf and on behalf of SERCO, sent to

13    Plaintiff a reiteration of SERCO's notice of Plaintiff's termination from employment with SERCO,

14    in which she makes specific reference to the lack of any alleged investigation of Plaintiff's ethics

15    complaint regarding CARPMAEL's unethical/illegal political campaign contributions, a true and

16    correct copy of which is attached hereto as **Ex. "M."**

17    40.    On or about February 28, 2007, Plaintiff received from SERCO a reversal of its prior

18    denial of Plaintiff's request for FMLA/CFRA LOA, a true and correct copy of which is attached

19    hereto as **Ex. "N."** The notice and letter reiterated the termination decision.

20    41.    Plaintiff's termination from employment with SERCO was a direct result of his expressing

21    opposition to the illegal activity alleged herein, which opposition constituted protected activity

22    under California law, specifically Cal.Gov.Code §81002- Political Reform Act of 1974.

23    42.    To date, Plaintiff has yet to receive any notification from SERCO of the outcome of any

24    alleged investigation of his ethics complaint regarding CARPMAEL's unethical/illegal political

25    campaign contributions. The stated reasons for Plaintiff's termination from employment with

26    SERCO were and are false and pretextual.

27    43.    Additionally and alternatively, Plaintiff's termination from employment with SERCO was

28    a direct result of his request fro a medical LOA under the provisions of the CFRA [California

Law Offices of
David S. Secrest
El Granada, CA

-9-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1  Govt. Code §12945.2(a)], which opposition constituted protected activity under California law.

2  44.    SANCHEZ AND CARPMAEL are individually liable for retaliation under Cal.Gov.Code

3  §12940(h).

4  45.    As a direct and proximate result of Plaintiff's termination from employment with SERCO,

5  Plaintiff has sustained general and compensatory damages that are subject to proof at the time of

6  trial.

7  **FIRST CAUSE OF ACTION**
   **Wrongful Termination in Violation of Public Policy**

8  [Cal.Gov.Code §81002- Political Reform Act of 1974; California Govt. Code §12945.2(a)]
   (Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)

9  46.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

10  contained in Paragraphs 1 through 44 in this Complaint as if they were fully set forth here.

11  47.    Plaintiff's termination from employment with SERCO was a direct result of his expressing

12  opposition to the illegal activity alleged herein, which opposition constituted protected activity

13  under California law, specifically Cal.Gov.Code §81002- Political Reform Act of 1974.

14  48.    Additionally and alternatively, Plaintiff's termination from employment with SERCO was

15  a direct result of his request fro a medical LOA under the provisions of the CFRA [California

16  Govt. Code §12945.2(a)], which opposition constituted protected activity under California law.

17  49.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

18  will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

19  and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

20  treatment by physicians, psychiatrists and other health professionals, and for other incidental

21  medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

22  employment benefits.  Plaintiff is thereby entitled to general and compensatory damages in

23  amounts to be proven at trial.

24  50.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

25  agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

26  a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

27  defendants' actions.  Defendants and each of them, and their agents/employees or supervisors,

28

Law Offices of
David S. Seecrest
El Granada, CA

-10-

1  authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is

2  entitled to punitive damages against each of said defendants.

3                          **SECOND CAUSE OF ACTION**
                          **Violation of Rights under CFRA**
4                          [California Govt. Code §12945.2(a)]
                  (Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)
5

6  51.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

7  contained in Paragraphs 1 through 49 in this Complaint as if they were fully set forth here.

8  52.    It is an unlawful employment practice for a covered employer to violate an employee's

9  rights under the CFRA. [Govt. Code §12945.2(a).]

10  53.    It is unlawful for an employer to refuse an employee's request for up to twelve weeks of

11  'family care and medical leave' in a year. [Govt. Code §12945.2(a).]

12  54.    In perpetrating the above-described action, the defendants and each of them and or their

13  agents/employees engaged in a pattern and practice of unlawful discrimination in violation of

14  Govt. Code §12945.2(a). At all relevant times herein and in violation of said provisions,

15  defendants and each of them, and/or their agents/employees, violated Plaintiff's rights under the

16  CFRA, and refused Plaintiff's request for up to twelve weeks of 'family care and medical leave' in

17  a year. In addition, defendants and each of them and/or their agents/employees engaged in such

18  unlawful violations and denial of statutory rights.

19  55.    Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the

20  enforcement procedures and remedies available for its violation are the same as for other FEHA

21  violations.

22  56.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the

23  same remedies as are available for violations of the FEHA (discussed above). These remedies

24  include: equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an

25  award of back pay, front pay and other compensatory damages, including emotional distress,

26  punitive damages and reasonable costs and attorney fees. [Govt. Code §12970.]

27  57.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

28  will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

Law Offices of
David S. Secrest
El Granada, CA

-11-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1  and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

2  treatment by physicians, psychiatrists and other health professionals, and for other incidental

3  medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

4  employment benefits.  Plaintiff is thereby entitled to general and compensatory damages in

5  amounts to be proven at trial.

6  **58.**    The conduct of defendants and each of them including DOES 1 through 50 and/or their

7  agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

8  a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

9  defendants' actions.  Defendants and each of them, and their agents/employees or supervisors,

10  authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is

11  entitled to punitive damages against each of said defendants.

12

13                                    **THIRD CAUSE OF ACTION**
               **Discrimination and Discharge Retaliation in Violation of CFRA**
14              [California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7]
                   (Against Defendants SERCO GROUP PLC, and SERCO, INC. DE)

15  59.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

16  contained in Paragraphs 1 through 57 in this Complaint as if they were fully set forth here.

17  60.    It is an unlawful employment practice for a covered employer to discriminate, discharge or

18  retaliate against an employee for exercising any right under the CFRA or for giving information or

19  testimony in connection with any investigation or inquiry into an alleged violation of the CFRA.

20  [Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.]

21  61.    SERCO is an employer covered by the CFRA.  Plaintiff was an employee eligible to take

22  CFRA leave.  Plaintiff exercised, or attempted to exercise, his right to take leave for a qualifying

23  CFRA purpose.  Plaintiff suffered an adverse employment action because of his exercise of such

24  right.

25  62.    In perpetrating the above-described action, the defendants and each of them and or their

26  agents/employees engaged in a pattern and practice of unlawful discrimination, discharge and

27  retaliation in violation of Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.  At all

28

-12-

**First Amended Complaint for Damages:** *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1    relevant times herein and in violation of said provisions, defendants and each of them, and/or their

2    agents/employees, violated Plaintiff's rights under the CFRA, and refused Plaintiff's request for up

3    to twelve weeks of 'family care and medical leave' in a year.  In addition, defendants and each of

4    them and/or their agents/employees engaged in such unlawful violations and denial of statutory

5    rights.

6    63.    Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the

7    enforcement procedures and remedies available for its violation are the same as for other FEHA

8    violations.

9    64.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the

10    same remedies as are available for violations of the FEHA (discussed above).  These remedies

11    include:  equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an

12    award of back pay, front pay and other compensatory damages, including emotional distress,

13    punitive damages and reasonable costs and attorney fees.  [California Govt. Code §12970.]

14    65.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

15    will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

16    and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

17    treatment by physicians, psychiatrists and other health professionals, and for other incidental

18    medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

19    employment benefits.  Plaintiff is thereby entitled to general and compensatory damages in

20    amounts to be proven at trial.

21    66.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

22    agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

23    a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

24    defendants' actions.  Defendants and each of them, and their agents/employees or supervisors,

25    authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is

26    entitled to punitive damages against each of said defendants.

27    //

28    //

Law Offices of
David S Secrest
El Granada, CA

-13-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of CFRA
[California Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7]
(Against All Defendants)

67.     Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 65 in this Complaint as if they were fully set forth here.

68.     It is an unlawful employment practice for a covered employer to discriminate, discharge or retaliate against an employee for exercising any right under the CFRA or for giving information or testimony in connection with any investigation or inquiry into an alleged violation of the CFRA. [Govt. Code §§12940(h), 12945.2(l); 2 Cal.Regs. §7297.7.]

69.     SERCO is an employer covered by the CFRA.  Plaintiff was an employee eligible to take CFRA leave.  Plaintiff exercised, or attempted to exercise, his right to take leave for a qualifying CFRA purpose.  Plaintiff suffered an adverse employment action because of his exercise of such right.  Specifically, SERCO fired Plaintiff for false and pretextual reasons because he exercised, or attempted to exercise, his right to take leave for a qualifying CFRA purpose.

70.     SANCHEZ, CARPMAEL, HULBERT, and HENRY are individually liable for retaliation under Cal.Gov.Code §12940(h), in that they each personally engaged in the decision-making process involved in the firing of Plaintiff for false and pretextual reasons.

71.     In perpetrating the above-described action, the defendants and each of them and or their agents/employees engaged in a pattern and practice of unlawful discrimination, discharge and retaliation in violation of Govt. Code §§12940(h), 12945.2(l); 2 Cal.C.Regs. §7297.7.  At all relevant times herein and in violation of said provisions, defendants and each of them, and/or their agents/employees, violated Plaintiff's rights under the CFRA, and refused Plaintiff's request for up to twelve weeks of 'family care and medical leave' in a year.  In addition, defendants and each of them and/or their agents/employees engaged in such unlawful violations and denial of statutory rights.

72.     Because the CFRA is part of the Fair Employment and Housing Act ("FEHA"), the enforcement procedures and remedies available for its violation are the same as for other FEHA violations.

Law Offices of
David S. Secrest
El Granada, CA

-14-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

73.    If a plaintiff prevails in establishing a violation of the CFRA, he or she may obtain the same remedies as are available for violations of the FEHA (discussed above). These remedies include: equitable relief (e.g., an order of reinstatement, hiring, promotion or transfer); and/or an award of back pay, front pay and other compensatory damages, including emotional distress, punitive damages and reasonable costs and attorney fees. [California Govt. Code §12970.]

74.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

75.    The conduct of defendants and each of them including DOES 1 through 50 and/or their agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
(Against All Defendants)

76.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 73 in this Complaint as if they were fully set forth here.

77.    The conduct of defendants, and each of them, as alleged above, was outrageous and outside the normal scope of the employment relationship. Defendants, and each of them, knew that their conduct would result in plaintiff's severe emotional distress, and said conduct was perpetrated by defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability of inflicting, humiliation, mental anguish, and severe emotional distress upon plaintiff. Such

Law Offices of
David S. Secrest
El Granada, CA

-15-

First Amended Complaint for Damages: *Timothy Sanocki v. Serco Group PLC, et al.*
San Francisco Superior Court No. CGC-07-465608

1   conduct did, in fact, result in severe emotional distress caused to Plaintiff.

2   78.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

3   will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

4   and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for

5   treatment by physicians, psychiatrists and other health professionals, and for other incidental

6   medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and other

7   employment benefits. Plaintiff is thereby entitled to general and compensatory damages in

8   amounts to be proven at trial.

9   79.    The conduct of defendants and each of them including DOES 1 through 50 and/or their

10  agents/employees as described herein was malicious, fraudulent, and/or oppressive, and done with

11  a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of

12  defendants' actions. Defendants and each of them, and their agents/employees or supervisors,

13  authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is

14  entitled to punitive damages against each of said defendants.

15                              **PRAYER FOR RELIEF**

16

17  **WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

18      1.  For compensatory and general damages in an amount according to proof;

19      2.  For punitive damages against all defendants under Civ. Code §3294;

20      3.  For injunctive relief pursuant to California Government Code Section 12965(b)(3),

    including, without limitation, a requirement that Defendants SERCO GROUP PLC, and SERCO,

21  INC. DE conduct training for all employees, supervisors, and management on the requirements of

22  the Fair Employment and Housing Act ("FEHA"), the rights and remedies of those who allege a

23  violation of the FEHA, and the employer's internal grievance procedures;

24

25

26

27

28

Law Offices of
David S. Secrest
El Granada, CA

-16-

1    4.  Plaintiff is also entitled to injunctive relief pursuant to Government Code Section 12965(b)

2    to restrain Defendants SERCO GROUP PLC, and SERCO, INC. DE from engaging in sexual

3    orientation harassment, and to order Defendants SERCO GROUP PLC, and SERCO, INC. DE to

4    take all reasonable steps to prevent harassment from occurring, to promptly investigate claims of

5    harassment, to remedy claims of harassment, to prevent retaliation, and to reinstate, or promote,

     Plaintiff to his former position as an emplyed of Defendant Defendants SERCO GROUP PLC,

6    and SERCO, INC. DE with full or accelerated pay and benefits;

7    5.  Injunctive and other equitable relief enjoining any further unlawful business practices and

8    establishing affirmative measures to ensure lawful conduct;

9    6.  For statutory attorneys' fees and costs;

10   7.  For prejudgment and post-judgment interest according to any applicable provision of law,

11   according to proof;

12   8.  For costs of suit;

13   9.  For such other and further relief as the court deems proper.

     Respectfully submitted.

14

15   Dated: August 9, 2007

16

17                    Law Offices of David S. Secrest

18

19                    David S. Secrest
                      Attorney for Plaintiff
20                    Timothy Sanocki

21

22

23

24

25

26

27

28

                              -17-

**First Amended Complaint for Damages:** *Timothy Sanocki v. Serco Group PLC, et al.*
                    San Francisco Superior Court No. CGC-07-465608

# EXHIBIT C

Westlaw.

177 P.3d 232                                                                                                                            Page 1
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

**H.**Jones v. Lodge at Torrey Pines Partnership
Cal.,2008.

Supreme Court of California
Scott **JONES**, Plaintiff and Appellant,
v.
The LODGE AT TORREY PINES PARTNERSHIP
et al., Defendants and Respondents.
**No. S151022.**

March 3, 2008.
Rehearing Denied April 30, 2008.[FN*]

FN* Kennard, Werdegar, and Moreno, JJ.,
are of the opinion the petition should be
granted.

**Background:** Employee sued employer and
supervisor alleging that employer engaged in sexual
orientation discrimination under Fair Employment
and Housing Act (FEHA), and that both employer
and supervisor were liable for retaliation under
FEHA. After entering judgment on a verdict
awarding employee $1,395,000 against employer and
$155,000 against supervisor, the Superior Court, San
Diego County, No. GIC811515,Richard E.L. Strauss,
J., granted defendants' motions for judgment
notwithstanding the verdict (JNOV) and,
alternatively, a new trial. Employee appealed.
Defendants filed protective cross-appeal from
original judgment. The Court of Appeal reversed,
reinstated the original judgment, and affirmed. The
Supreme Court granted review, superseding the
opinion of the Court of Appeal.

**Holding:** The Supreme Court, Chin, J., held that
nonemployer individuals may not be held personally
liable under FEHA for their role in retaliation,
disapproving *Taylor v. City of Los Angeles Dept. of
Water & Power,* 144 Cal.App.4th 1216, 51
Cal.Rptr.3d 206, and *Walrath v. Sprinkel,* 99
Cal.App.4th 1237, 121 Cal.Rptr.2d 806.

Judgment of Court of Appeal reversed and remanded.

Opinion, 54 Cal.Rptr.3d 379, superseded.

Werdegar, J., filed dissenting opinion.

Moreno, J., filed dissenting opinion, in which
Kennard and Werdegar, JJ., joined.

West Headnotes

[1] Civil Rights 78 ☜1113

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1113 k. Individuals as "Employers".
Most Cited Cases

Civil Rights 78 ☜1736

78 Civil Rights
    78V State and Local Remedies
        78k1734 Persons Protected, Persons Liable,
and Parties
            78k1736 k. Employment Practices. Most
Cited Cases
The employer may be held liable for retaliation under
the Fair Employment and Housing Act (FEHA), but
nonemployer individuals may not be held personally
liable under FEHA for their role in that retaliation;
although FEHA prohibits retaliation by "any
employer, labor organization, employment agency, or
person," the rationale for not holding individuals
personally liable for discrimination claims under
FEHA applies equally to retaliation claims;
disapproving *Taylor v. City of Los Angeles Dept. of
Water & Power,* 144 Cal.App.4th 1216, 51
Cal.Rptr.3d 206, and *Walrath v. Sprinkel,* 99
Cal.App.4th 1237, 121 Cal.Rptr.2d 806.West's
Ann.Cal.Gov.Code § 12940(h).
See *8 Witkin, Summary of Cal. Law (10th ed. 2005)
Constitutional Law, § 940; Chin et al., Cal. Practice
Guide: Employment Litigation (The Rutter Group
2005) ¶¶ 7:180, 7:770 et seq. (CAEMPL Ch. 7-A);
Cal. Jur. 3d, Labor, § 77; Cal. Civil Practice
(Thomson/West 2007) Employment Litigation, § 2:75.*
[2] Civil Rights 78 ☜1736

78 Civil Rights
    78V State and Local Remedies

177 P.3d 232

Page 2

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P 43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

78k1734 Persons Protected, Persons Liable, and Parties
    78k1736 k. Employment Practices. Most Cited Cases
Although the employer may be liable for unlawful discrimination under Fair Employment and Housing Act (FEHA), individuals working for the employer, including supervisors, are not personally liable under FEHA for that discrimination. West's Ann.Cal.Gov.Code § 12940(a).

**[3] Statutes 361 ⇌184**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k180 Intention of Legislature
                361k184 k. Policy and Purpose of Act. Most Cited Cases

**Statutes 361 ⇌217.4**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.4 k. Legislative History in General. Most Cited Cases
If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.

**[4] Statutes 361 ⇌217.3**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.3 k. Legislative Hearings, Reports, Etc. Most Cited Cases
Although the Legislative Counsel's summaries are not binding, they are entitled to great weight.

**[5] Statutes 361 ⇌220**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction

                361k220 k. Legislative Construction. Most Cited Cases
The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law.

**[6] Evidence 157 ⇌33**

157 Evidence
    157I Judicial Notice
        157k27 Laws of the State
            157k33 k. Legislative Proceedings and Journals. Most Cited Cases
In supervisor's appeal from judgment on jury verdict awarding employee $155,000 in compensatory damages in retaliation claim under Fair Employment and Housing Act (FEHA), Supreme Court would grant employee's request that it take judicial notice of five-page document entitled, "Proposed Changes to the Fair Employment and Housing Act for 1986," which was allegedly included in material found in legislative bill file, although it was undated and unsigned, did not state who authored it, and did not appear to be a committee report, but Supreme Court would ultimately find the document to be of little or no help in ascertaining legislative intent behind language of FEHA prohibiting retaliation. West's Ann.Cal.Evid.Code § 452(c); West's Ann.Cal.Gov.Code § 12940(h).

***625 Toothacre & Toothacre, Scott H. Toothacre and Rod M. Toothacre, San Diego, for Plaintiff and Appellant.
Law Offices of Jeffrey K. Winikow and Jeffrey K. Winikow, Los Angeles, for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.
Horvitz & Levy, Barry R. Levy, Encino, Nina E. Scholtz; Wilson Petty Kosmo & Turner, Regina A. Petty, Michael S. Kalt, Jessica A. Chasin, San Diego; and Robert H. Gleason, for Defendants and Respondents.
Law Offices of Steven Drapkin and Steven Drapkin, Los Angeles, for Employers Group, California Employment Law Council and California Chamber of Commerce as Amici Curiae on behalf of Defendants and Respondents.
Liebert Cassidy Whitmore, Melanie M. Poturica and David A. Urban, Los Angeles, for League of California Cities as Amicus Curiae on behalf of Defendants and Respondents.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232

Page 3

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

CHIN, J.
**\*1160\*\*234** In _Reno v. Baird_ (1998) 18 Cal.4th 640,
76 Cal.Rptr.2d 499, 957 P.2d 1333(_Reno_ ), we held
that, although an employer may be held liable for
discrimination under the California Fair Employment
and Housing Act (FEHA) ( Gov.Code, § 12900 et
seq.),[FN1] nonemployer individuals are not personally
liable for that discrimination. In this case, we must
decide whether the FEHA makes individuals
personally liable for _retaliation._ We conclude that the
same rule applies to actions for retaliation that
applies to actions for discrimination: The employer,
but not nonemployer individuals, may be held liable.

> FN1. All further statutory references are to
> the Government Code unless otherwise
> indicated. Unlabeled references to
> subdivisions are to subdivisions of section
> 12940.

## I. PROCEDURAL HISTORY

Plaintiff Scott Jones sued his employer, The Lodge at
Torrey Pines Partnership (The Lodge), and his
supervisor at work, Jean Weiss, as well as others no
longer involved in this litigation, for various causes
of action, including sexual orientation harassment in
violation of section 12940, subdivision (j)(1), sexual
orientation discrimination in violation of subdivision
(a), **\*1161** and retaliation in violation of subdivision
(h). The trial court granted summary **\*\*\*626**
adjudication in defendants' favor regarding some of
the causes of action, including the harassment cause
of action. It found that plaintiff had failed to present
admissible evidence of harassment by Weiss that was
severe and pervasive enough to alter the conditions of
his employment and create an abusive working
environment.

Ultimately, two causes of action went to a jury trial:
the claim for sexual orientation discrimination
against the Lodge only, and the claim for retaliation
against both The Lodge and Weiss. The jury returned
a verdict for plaintiff on both causes of action. It
awarded compensatory damages of $1,395,000
against The Lodge and $155,000 against Weiss, but
found Weiss did not act with malice or oppression.

The trial court originally entered judgment on the
verdict, but later it granted both defendants' motions
for judgment notwithstanding the verdict and,

alternatively, for a new trial. Among other things, it
concluded that plaintiff had presented insufficient
evidence that he had suffered an adverse employment
action as to both causes of action. Concerning
defendant Weiss, it also ruled that an individual
cannot be liable for retaliation. It entered judgment in
favor of both defendants.

Plaintiff appealed, and defendants cross-appealed.
The Court of Appeal reversed the order granting the
motions for judgment notwithstanding the verdict and
for a new trial, and reinstated the original judgment
on the verdict. Among other things, the court
concluded there was sufficient evidence that plaintiff
had suffered an adverse employment action. It also
found that an individual can be held liable for
retaliation under the FEHA.

We granted defendants' petition for review limited to
the question whether an individual may be held
personally liable for retaliation under the FEHA.

## II. DISCUSSION

Section 12940, part of the FEHA, begins, "It shall be
an unlawful employment practice, unless based upon
a bona fide occupational qualification, or, except
where based upon applicable security regulations
established by the United States or the State of
California: ..." Several subdivisions follow, defining
various unlawful employment practices. One
unlawful employment practice is for an employer to
engage in specified kinds of discrimination. (Subd.
(a).) Another, the one involved in this case, is "[f]or
any employer, labor organization, employment
agency, or person to discharge, expel, or otherwise
discriminate against any person because the person
has opposed any practices forbidden under this part
or because the **\*1162** person has filed a complaint,
testified, or assisted in any proceeding under this
part." (Subd. (h).) This form of unlawful employment
practice is often called simply "retaliation." (See,
e.g., _Yanowitz v. L'Oreal USA, Inc._ (2005) 36 Cal.4th
1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123(_Yanowitz_
).) Another unlawful employment**\*\*235** practice is
harassment. (Subd. (j).)[FN2]

> FN2. The Assembly passed two bills
> amending section 12940 effective January 1,
> 2001. (Assem. Bill No. 1856 (1999-2000
> Reg. Sess.) and Assem. Bill No. 2222

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

Page 4

(1999-2000 Reg. Sess.).) By its own terms, Assembly Bill No. 2222 incorporated the changes imposed by Assembly Bill No. 1856. Among other changes, this legislation added new subdivisions (e) and (f) to section 12940 and redesignated former subdivisions (e) through (k) as subdivisions (g) through (m), respectively. (Stats.2000, ch. 1049, §§ 7.5, 11.) Accordingly, current subdivision (h) was formerly subdivision (f), and current subdivision (j) was formerly subdivision (h).

***627[1][2] Plaintiff has sued his supervisor at work, as well as the employer itself, for retaliation. We must decide whether individuals may be held personally liable for retaliation. In *Reno, supra,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, we held that, although the employer may be liable for unlawful discrimination, individuals working for the employer, including supervisors, are not personally liable for that discrimination. The question here is whether language differences between subdivisions (a) (concerning discrimination) and (h) (concerning retaliation) require a different rule as to retaliation. Subdivision (a) makes it an unlawful employment practice for "an employer" to discriminate. Subdivision (h) makes it an unlawful employment practice for "any employer, labor organization, employment agency, or person" to retaliate.

Plaintiff argues that section 12940's plain language- specifically, the use of the word "person" in subdivision (h) to describe who may not retaliate- compels the conclusion that all persons who engage in prohibited retaliation are personally liable, not just the employer. Accordingly, plaintiff argues, we must follow that plain meaning without engaging in other kinds of statutory interpretation. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737, 21 Cal.Rptr.3d 676, 101 P.3d 563.) The courts that have considered the same argument, including the Court of Appeal in this case, have so held. (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1236- 1237, 51 Cal.Rptr.3d 206; *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1240-1242, 121 Cal.Rptr.2d 806; see also *Winarto v. Toshiba America Electronics Components* (9th Cir.2001) 274 F.3d 1276, 1287- 1288, and cases cited.) We disagree.

[3] The statutory language is not plain. Subdivision

(j), the subdivision prohibiting harassment, provides, "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee...." (Subd. (j)(3).) This is clear language imposing personal liability on all employees for their own harassing actions. Subdivision (h) is far less clear. Its language does lend itself to *1163 plaintiff's interpretation, but, as we explain, that is not the only reasonable interpretation of the statutory language. "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra,* 34 Cal.4th at p. 737, 21 Cal.Rptr.3d 676, 101 P.3d 563.)

The language difference between subdivisions (a) and (h) of section 12940 is not as great as initially appears. Although subdivision (a) does not itself use the word "person" to describe who engages in the prohibited discrimination, in two respects that subdivision arguably does govern discrimination by a "person." First, section 12926, subdivision (d), defines "[e]mployer" (the word used in § 12940, subd. (a)) as including "any *person* acting as an agent of an employer, directly or indirectly...." (Italics added.) Second, subdivision (i) of section 12940 makes it an unlawful employment practice "[f]or any *person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or attempt to do so." (Italics added.) The plaintiff in *Reno* argued that the use of the word "person" in these provisions meant that persons, as well as the employer itself, could be liable for discrimination. We rejected the argument. We said the person-as- agent language of section 12926, subdivision (d), *could* mean, as the plaintiff urged, that such persons can be held personally***628 liable, but it could also have been " 'intended only to ensure that *employers* will be held liable if **236 their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.' " (*Reno, supra,* 18 Cal.4th at p. 647, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 66, 53 Cal.Rptr.2d 741(*Janken* ).) For several reasons, we agreed with the *Janken* court that the latter construction was the correct one. (*Reno, supra,* at pp. 647-655, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We also concluded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**
Page 5

that the aiding and abetting language of former subdivision (g) (now subd. (i)) of section 12940 did not impose personal liability on nonemployers. (*Reno, supra,* at pp. 655-656, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

The question whether personal liability exists where the statutes prohibit discrimination by "any person acting as an agent of an employer" (§ 12926, subd. (d)) and by "any person" who aids and abets an unlawful employment practice (§ 12940, subd. (i))-which we resolved in *Reno, supra,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333-is similar to the question presented here-whether personal liability exists where the statute prohibits retaliation by "any employer, labor organization, employment agency, or person...."(*Id.,* subd. (h).)) We can and must analyze it similarly. In context, the Legislature may have used the word "person" in subdivision (h) for reasons unrelated to a desire to make individuals personally liable for retaliation. Subdivision (h) is a catchall provision aimed at prohibiting retaliation against "any person because the person has opposed any practices forbidden *under this part* or because the ***1164** person has filed a complaint, testified, or assisted in any proceeding *under this part.*" (Italics added.) The subdivision thus incorporates other unlawful employment practices defined in other parts of section 12940, and forbids retaliation against anyone opposing any such unlawful employment practice. Each of the entities to which subdivision (h) applies-employer, labor organization, employment agency, or person-is the subject of one or more other subdivisions of section 12940 defining specific unlawful employment practices. It is possible the Legislature merely wanted to use each of these terms in subdivision (h) to conform to the fact that other provisions use those terms, rather than to impose personal liability on individuals in addition to the employer itself. Accordingly, we must engage in statutory interpretation to resolve this ambiguity, as we did in *Reno* itself.

*Reno's* rationale for not holding individuals personally liable for discrimination applies equally to retaliation. In *Reno,* we noted that the FEHA prohibits harassment as well as discrimination but that it treated them differently. (*Reno, supra,* 18 Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We recognized that at least some individuals may be liable for harassment.[FN3] But we concluded

that the FEHA ***629** does not make individuals personally liable for discrimination. We found persuasive *Janken, supra,* 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741, which had " 'conclude[d] that the Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions-which might later be considered discriminatory-as inherently necessary to performance of a supervisor's job.' " (*Reno, supra,* at p. 645, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting *Janken, supra,* at pp. 62-63, 53 Cal.Rptr.2d 741.)

> FN3. Later, in *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083, we held that nonsupervising coworkers are not personally liable for harassment under the FEHA. After we decided *Carrisales,* the Legislature abrogated its holding in legislation which became effective January 1, 2001. (See *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015.)Section 12940, subdivision (j)(3), now provides: "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

"The [*Janken* ] court noted that 'harassment consists of a type of conduct not necessary for performance of a supervisory job. ***237** Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. [Citations.] [¶] Discrimination claims, by contrast, arise out of the performance of necessary personnel management duties. *1165 While harassment is not a type of conduct necessary to personnel management, making decisions is a type of conduct essential to personnel

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 6

management. While it is possible to avoid making personnel decisions on a prohibited discriminatory basis, it is not possible either to avoid making personnel decisions or to prevent the claim that those decisions were discriminatory. [¶] ... An individual supervisory employee cannot ... refrain from engaging in the type of conduct which could later give rise to a discrimination claim. Making personnel decisions is an inherent and unavoidable part of the supervisory function. Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties.' " (*Reno, supra,* 18 Cal.4th at pp. 645-646, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting *Janken, supra,* 46 Cal.App.4th at pp. 63-64, 53 Cal.Rptr.2d 741.)

"The *Janken* court also noted that the FEHA exempts small employers from liability for discrimination. 'Section 12926, subdivision (d) defines "employer" as including "any person regularly employing five or more persons." A person who regularly employs less than five other persons is not an "employer" for purposes of FEHA prohibitions on discrimination, and hence cannot be sued for discrimination. (*Jennings v. Marralle* (1994) 8 Cal.4th 121[, 32 Cal.Rptr.2d 275, 876 P.2d 1074].) For purposes of harassment, however, "employer" is specially defined in section 12940, [former] subdivision (h)(3)(A) to include any person regularly employing *one* or more persons. Section 12940, [former] subdivision (h)(4) and (5) make clear that this special definition of "employer" as someone employing only *one* other person applies only to harassment claims, and that discrimination claims continue to be covered by the "five or more" definition in section 12926, subdivision (d). The Legislature thus made a clear distinction in California in the treatment of harassment claims versus the treatment of discrimination claims: small employers can be sued for harassment, but they cannot be sued for discrimination. [¶] ... [¶] ... The Legislature clearly intended to protect employers of less than five from the burdens of litigating discrimination claims. [Citation.] ... [I]t is "inconceivable" that the Legislature simultaneously intended to subject individual nonemployers to the burdens of litigating such claims. To so ***630 construe the statute would be "incongruous" and would "upset the balance" struck by the Legislature.' (*Janken, supra,* 46 Cal.App.4th at pp. 71-72[, 53 Cal.Rptr.2d 741], original italics, fns. omitted.)" (*Reno, supra,* 18 Cal.4th at pp. 650-651, 76 Cal.Rptr.2d 499, 957 P.2d

1333.)

"The *Janken* court stated that 'imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment. The minimal potential for benefit to an alleged victim juxtaposed with the potentially severe adverse effects of imposing personal liability on individual supervisory employees is an additional reason for our conclusion that this is not the result intended by the Legislature.

*1166 " 'Many courts have noted the importance of maintaining the conditions in which impartial judgment can be exercised by officials performing duties in the public sector. [Citations.] ... [¶] No one could reasonably doubt that effective and efficient management of industrial enterprises and other economic organizations is also important to the public welfare. The societal interest in effective private sector personnel management may be less direct, but only marginally (if at all) less compelling.... Yet it is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises**238 and other economic organizations would be seriously affected. [Citation.] [¶] ... [¶]

" 'Plaintiffs' theory would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision.... [It] would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. The employee would thus be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. The insidious pressures of such a conflict present sobering implications for the effective management of our industrial enterprises

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
Page 7
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

and other organizations of public concern. We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here.

" 'Moreover, imposing personal liability against individual supervisory employees adds little to an alleged victim's legitimate prospects for monetary recovery. The plaintiff-employee's primary target remains the employer. Adding individual supervisors personally as defendants adds mostly an in terrorem quality to the litigation, threatening individual supervisory employees with the spectre of financial ruin for themselves and their families and correspondingly enhancing a plaintiff's possibility of extracting a settlement on a basis other than the merits. Enhancing the prospects for obtaining a settlement on a basis other than the merits is hardly a worthy legislative objective....' " (*Reno, supra,* 18 Cal.4th at pp. 651-653, 76 Cal.Rptr.2d 499, 957 P.2d 1333, quoting *Janken, supra,* 46 Cal.App.4th at pp. 72-75, 53 Cal.Rptr.2d 741.)

**\*\*\*631** In *Reno,* we also explained that "[c]orporate decisions are often made collectively by a number of persons. Different individuals might have differing levels of awareness and participation in the decisions. When a collective **\*1167** decision is discriminatory, some participants might have acted innocently, others less so. Assessing individual blame might be difficult, in contrast to simply placing blame on the corporation, on whose behalf the individuals acted. Moreover, to make collective decisions possible, individuals often must rely on information or evaluations that others supply. Imposing individual liability for collective decisions might place the individuals in an adversarial position to each other (as well as to the corporation). Individuals might fear that a potentially controversial but, so far as they can know, correct and necessary collective decision might be misconstrued and give rise to a discrimination action. Out of caution, they might feel compelled to dissent from that decision, or attempt to disassociate themselves from it, merely to protect their pocketbooks. For these reasons, imposing liability on the corporate whole rather than each individual who participated in the corporate decision is sensible." (*Reno, supra,* 18 Cal.4th at p. 662, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

We also explained that "[w]e do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (*Reno, supra,* 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) "For these reasons, we conclude[d] that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." (*Ibid.*)

All of these reasons for not imposing individual liability for discrimination-supervisors**\*\*239** can avoid harassment but cannot avoid personnel decisions, it is incongruous to exempt small employers but to hold individual nonemployers liable, sound policy favors avoiding conflicts of interest and the chilling of effective management, corporate employment decisions are often collective, and it is bad policy to subject supervisors to the threat of a lawsuit every time they make a personnel decision-apply equally to retaliation. Indeed, some may apply even more forcefully to retaliation claims. If an employee gains a reputation as a complainer, supervisors might be particularly afraid to impose discipline on that employee or make other lawful personnel decisions out of fear the employee might claim the action was retaliation for the complaining. The Legislature has given the same exemption to small employers against claims of retaliation that it gave small employers against claims of discrimination. (See § 12940, subd. (j) (4)(A) ["The definition of 'employer' in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision."].) No reason **\*1168** appears why it would want to make nonemployer individuals personally liable for retaliation but not for discrimination.[FN4]

> FN4. Justice Moreno's dissent argues, in part, that a supervisor who is liable for harassment should also be liable for retaliating against someone who opposes or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
Page 8
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

reports that harassment. This case does not present that situation. Although plaintiff included a cause of action for harassment in his complaint, the trial court ruled, in a ruling long-since final and binding in this case, that there was no actionable harassment. Therefore, Weiss is *not* liable for harassment. Because the issue is not presented, we express no opinion on whether an individual who is personally liable for harassment might also be personally liable for retaliating against someone who opposes or reports that same harassment.

Justice Werdegar's dissent asserts that our conclusion "undermines the entire purpose of the FEHA."(Dis. opn. of Werdegar, J., *post,* 72 Cal.Rptr.3d at p. 637, 177 P.3d at p. 244.) Here, the jury awarded plaintiff a judgment of $1,395,000 against his employer, an award no longer at issue in this case. Because the FEHA targets unlawful *employment* practices (§ 12940), we suggest that imposing a substantial judgment against the employer rather than a nonemployer does not entirely undermine its purpose.

**\*\*\*632** In *Yanowitz, supra,* 36 Cal.4th 1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123, we considered what type of employment actions are sufficiently adverse to the employee to support a cause of action for retaliation. The relevant statutory language regarding discrimination is somewhat different than the language regarding retaliation. (Compare subd. (a) ["to discriminate against the person in compensation or in terms, conditions, or privileges of employment"] with subd. (h) ["to discharge, expel, or otherwise discriminate"].) Because of this language difference, the plaintiff argued that the test of what is an adverse employment action should be broader for retaliation claims than for discrimination claims. We disagreed: "When the provisions of section 12940 are viewed as a whole, ... we believe it is more reasonable to conclude that the Legislature intended to extend a comparable degree of protection both to employees who are subject to the types of basic forms of discrimination at which the FEHA is directed-that is, for example, discrimination on the basis of race or sex-and to employees who are discriminated against in retaliation for opposing such discrimination, rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination. [Citations.] Accordingly, we conclude that the term 'otherwise discriminate' in section 12940(h) should be interpreted to refer to and encompass the *same forms* of adverse employment activity that are actionable under section 12940(a)." (*Yanowitz, supra,* at pp. 1050-1051, 32 Cal.Rptr.3d 436, 116 P.3d 1123, italics added.) Thus, in order to establish either a discrimination or a retaliation claim, "an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment...."(*Id.* at p. 1051, 32 Cal.Rptr.3d 436, 116 P.3d 1123; see also *id.* at p. 1052, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)

If, as we held in *Yanowitz,* the employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination, it is hard to conceive why the Legislature would impose **\*1169** individual liability for actions that are claimed to be retaliatory but not for **\*\*240** the *same* actions that are claimed to be discriminatory.

The legislative history or, more precisely, the *absence* of legislative history, behind the inclusion of the word "person" in subdivision (h) of section 12940 also supports our conclusion that the subdivision does not impose personal liability on nonemployer individuals. The word "person" was added to former subdivision (f) (now subd. (h)), in 1987, effective January 1, 1988. (Stats.1987, ch. 605, § 1, p.1942.) If plaintiff is correct that the word "person" in subdivision (h) makes individuals liable for retaliation, then the legislation that **\*\*\*633** added that word created individual liability where none had existed previously. The legislative history behind Assembly Bill No. 1167 (1987-1988 Reg. Sess.) (Assembly Bill No. 1167), the bill that added "person" to former subdivision (f) (now subd. (h)), does not support this conclusion.

Assembly Bill No. 1167 made several changes to various parts of the FEHA. As originally introduced, it added the word "person" to section 12940, former subdivision (e) (now subd. (g)). On April 28, 1987,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 9

the bill was amended to no longer add "person" to former subdivision (e), but instead to add that word to former subdivision (f) (now subd. (h), the provision at issue here). Thus, if plaintiff is correct, the April 28, 1987, amendment substantially changed the law. If so, this change left no trace in the legislative history. The Legislative Counsel's Digest summarized several of the changes the bill made as originally introduced, but it said nothing about any change to section 12940. Instead, it said only, "The bill would, in addition, make various conforming changes to the act." (Legis. Counsel's Dig., Assem. Bill No. 1167, as introduced Mar. 3, 1987, p. 1.) Later, after the April 28, 1987, amendment, which made several changes in addition to adding the word "person" to former subdivision (f), the Legislative Counsel's Digest described several of the amendments, but again made no mention whatever of section 12940. Instead, it said only, "The bill would, in addition, make various *technical and conforming* changes to the act." (Legis. Counsel's Dig., Assem. Bill No. 1167, 4 Stats.1987, Summary Dig., p. 179, italics added.) Thus, the Legislative Counsel *never* specifically mentioned the proposed change to section 12940, but merely lumped it into the catchall term, "technical and conforming changes."

[4] "The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature." (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 428, fn. 5, 173 Cal.Rptr. 917.)The Legislative Counsel's summaries "are prepared to assist the Legislature in its consideration of pending legislation." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17, 270 Cal.Rptr. 796, 793 P.2d 2.)*1170 Although the Legislative Counsel's summaries are not binding (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1233, fn. 9, 48 Cal.Rptr.3d 144, 141 P.3d 256), they are entitled to great weight. (*California Assn. of Psychology Providers v. Rank, supra,* at p. 17, 270 Cal.Rptr. 796, 793 P.2d 2.) "It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest." (*People v. Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434, 155 Cal.Rptr. 704, 595 P.2d 139.) Thus, it is reasonable to presume that, when the Legislature added the word "person" to the retaliation subdivision it intended to make only a technical and conforming change. If adding the word "person" merely conformed to the use of the word in

describing some of the unlawful employment practices the retaliation provision references, the change could legitimately be described as technical and conforming. A change that created individual liability for retaliation where none had existed previously would be quite substantive, not technical.

Other legislative history bolsters the conclusion that Assembly Bill No. 1167 only made a technical change in the law. For example, the Assembly third reading analysis of Assembly Bill No. 1167, as amended on April 28, 1987, described some of the bill's provisions but did not mention the change to section 12940. Instead, it said only that the bill "[m]akes other technical***634 and conforming changes." (Assem., 3d reading analysis of Assem. Bill No. 1167, as amended Apr. 28, **241 1987, p. 1.) Other committee reports say essentially the same thing. (E.g., Assem. Com. on Housing and Community Development, Rep. on Assem. Bill No. 1167 as amended Apr. 28, 1987 [the bill "[m]akes other technical and conforming changes to the [FEHA]"]; Sen. Housing and Urban Affairs Com., Rep. on Assem. Bill No. 1167, as amended Apr. 28, 1987 [same].)

All indications are that Assembly Bill No. 1167 had no significant opposition. A bill analysis by the Department of Fair Employment and Housing (DFEH), signed by the "Department Director," described the bill, as amended on April 28, 1987, as "a technical clean-up bill to clarify various sections of the [FEHA] and make standards within the [FEHA] more consistent between subsections." (DFEH, Analysis of Assem. Bill No. 1167, as amended Apr. 28, 1987, p. 1.) It described several of the changes the bill would make, but again it does not mention at all the amendment to section 12940. It recommended supporting the bill, noting that the DFEH and the Fair Employment and Housing Commission (FEHC) "worked together to develop this technical clean-up legislation with the effort to make it noncontroversial." (*Id.,* p. 2.) Similarly, an enrolled bill report that the DFEH prepared, signed by the same Department Director who signed the DFEH's bill analysis, described Assembly Bill No. 1167 as technical cleanup legislation that was designed to be noncontroversial. It recommended the Governor sign the bill and noted *1171 that it had no opposition. (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1167, Sept. 3, 1987.) The legislation passed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 10

by a vote of 32 to 0 in the Senate and 64 to 9 in the Assembly. (*Ibid.*) It is hard to imagine that a bill that created individual liability for retaliation where none had existed could be considered so noncontroversial.

The recent decision of *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 48 Cal.Rptr.3d 340 considered an argument that certain legislation significantly changed the law even though, as here, the supposed change left no trace in the legislative history. The Court of Appeal's summary, adapted to reflect the precise legal issue of this case, is apt. "It is difficult to imagine that legislation that would have [created individual liability for retaliation where none had existed] could properly be characterized as 'noncontroversial [or technical].' And we think it highly unlikely that the Legislature would make such a significant change in the [potential liability of individuals] without so much as a passing reference to what it was doing. The Legislature 'does not, one might say, hide elephants in mouseholes.' (*Whitman v. American Trucking Assns., Inc.* (2001) 531 U.S. 457, 468[, 121 S.Ct. 903, 149 L.Ed.2d 1].)" (*Id.* at p. 589, 48 Cal.Rptr.3d 340; see also *In re Christian S.* (1994) 7 Cal.4th 768, 782, 30 Cal.Rptr.2d 33, 872 P.2d 574 ["We are not persuaded the Legislature would have silently, or at best obscurely, decided so important and controversial a public policy matter and created a significant departure from the existing law."].)

[5] Plaintiff relies on some different legislative history to support his position. He cites an enrolled bill report that the DFEH prepared for the bill that made coworkers liable for harassment. That report said that "[e]xisting law provides that when a person retaliates against another person for opposing practices forbidden by the FEHA ... a complaint may be filed against any employer, labor organization, employment agency, or person." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 ***635 (1999-2000 Reg. Sess.), Sept. 11, 2000, p. 3, citing former subd. (f) (now subd. (h)).) Assuming that a complaint may be filed against a person was intended to mean that a nonemployer individual could be held personally liable for retaliation, the statement, in a report prepared *after* the 2000 Legislature had passed legislation imposing liability on individuals for *harassment,* does not support the conclusion that the 1987 Legislature intended to impose individual liability for *retaliation*–especially

given the DFEH's own contemporaneous assessment of Assembly Bill No. 1167 (the bill that supposedly created individual liability for retaliation) as merely making noncontroversial technical changes to the FEHA. " 'The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law....' "**242(*Lolley v. Campbell* (2002) 28 Cal.4th 367, 379, 121 Cal.Rptr.2d 571, 48 P.3d 1128.) Moreover, that same report also said that "existing law provides that a complaint may be file[d] against a person who aids, abets, incites, compels, *1172 or coerces acts forbidden by the FEHA, or attempts to do so." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.) Sept. 11, 2000, p. 3, citing former subd. (g) (now subd. (i)).) At the time the report was written, this court had already rejected the argument that former subdivision (g) imposed personal liability on individuals. (*Reno, supra,* 18 Cal.4th at pp. 655-656, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Accordingly, this bit of legislative history is not persuasive.

Plaintiff also relies on a five-page document that, according to his judicial notice request, was included in material found in "the legislative bill file of the Assembly Committee on Housing and Community Development on Assembly Bill 1167." It is entitled, "Proposed Changes to the Fair Employment and Housing Act for 1986." It is undated and unsigned, and does not state who authored it. It does not appear to be a committee report. Under the title is stated, "The following is a summary of proposed changes to the Fair Employment and Housing Act, which both the Department of Fair Employment and Housing and the Fair Employment and Housing Commission staff have developed." Plaintiff assumes this statement means that staff of the DFEH or the FEHC, or both, prepared the summary, but it could just as well mean only that the staff developed the proposed changes. Accordingly, it is not clear who wrote the document and for what purpose.

[6] "[W]ithout knowing who prepared the documents and for what purpose"(*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 10, fn. 3, 219 Cal.Rptr. 13, 706 P.2d 1146), we doubt very much the document helps ascertain legislative intent.[FN8] It is not clear which legislators, if any, read it. Plaintiff argues that there is "no evidence that [the document] was *not* considered by the Legislature...."

177 P.3d 232
Page 11
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

But, even if authored by administrative staff, we have no basis on which to conclude the document reflects ***636 the intent of the legislators who enacted the legislation.

> FN5. The court in _State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,_ 40 Cal.3d at page 10, footnote 3, 219 Cal.Rptr. 13, 706 P.2d 1146, denied judicial notice of the document in question. In this case, before oral argument, we granted both parties' requests to notice legislative history materials, including, over defendants' objection, plaintiff's request to notice the five-page document discussed in the text. We will generally grant requests to notice legislative history documents, meaning we will at least _consider_ them, even if, as here, we ultimately find some to be of little or no help in ascertaining legislative intent. (Evid.Code, § 452, subd. (c); see _In re S.B._ (2004) 32 Cal.4th 1287, 1296, fn. 3, 13 Cal.Rptr.3d 786, 90 P.3d 746.)

Moreover, even if we consider the document for whatever value it may have, it does not help plaintiff's position. As relevant, it states that the rationale for adding the word "person" to former subdivision (f) (now subd. (h)), "is to _conform with other sections of the Act which refer to unlawful conduct by a 'person.'_ More importantly, the change will extend coverage to anyone who retaliates against an individual because that person filed a charge with DFEH. This will provide more protection to people exercising their lawful right to *1173 file with DFEH."(Italics added.) The italicized language supports the view that the Legislature added the word "person" merely to conform to the fact that some other parts of the statute also use the word "person."

The rest of the quoted language, saying that the change will "extend coverage" and "provide more protection," is itself ambiguous. It does not say _how_ the bill would extend coverage and provide more protection. If it said it would do so by making nonemployer individuals personally liable for retaliation, it would be clear; but it does not say that. Even if we assume that some legislators read this summary, it provides no basis to assume that the Legislature intended to create individual liability for retaliation that had not previously existed. In short,

an anonymous document that may or may not have been read by many legislators, that may or may not have reflected any legislator's intent, and that is ambiguous as relevant, **243 does not aid us in ascertaining legislative intent.[FN6]

> FN6. Plaintiff also cites two committee reports regarding this same bill, which stated that some legal sources had believed individual liability for harassment had existed before our decision in _Carrisales v. Department of Corrections, supra,_ 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083. These statements hardly support the conclusion that any Legislature intended to impose personal liability for _retaliation._

Plaintiff also argues that the FEHC has interpreted the FEHA as imposing personal liability for retaliation on individuals. He cites a single precedential case. (_Dept. Fair Empl. & Hous. v. J & J King of Beepers_ (1999) No. 99-02, FEHC Precedential Decs. 1998-1999, CEB 1, p. 1.) That opinion held that a supervisor was personally liable for harassment. (_Id._ at p. 22-23.) It also stated, "It is further determined that respondents [the employer and the supervisor] are each liable for [the supervisor's] retaliatory termination of complainant, in violation of Government Code section 12940, subdivisions (a), [former subd.] (f), and [former subd.] (h)." (_Id._ at p. 23.) The opinion does not state the basis for this conclusion. Although an administrative agency's contemporaneous interpretation of a statute under which it operates is ordinarily entitled to great weight, we rejected similar reliance on FEHC decisions in both _Reno, supra,_ 18 Cal.4th at pages 660-661, 76 Cal.Rptr.2d 499, 957 P.2d 1333, and _Carrisales v. Department of Corrections, supra,_ 21 Cal.4th at pages 1138-1139, 90 Cal.Rptr.2d 804, 988 P.2d 1083. The opinion plaintiff cites contained no legal analysis. Moreover, rather than being contemporaneous, it was decided many years after Assembly Bill No. 1167 added the word "person" to former subdivision (f). We find more convincing the DFEH's contemporaneous assessment of that bill as making merely noncontroversial, technical changes in the law.

For these reasons, we conclude that the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P 43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 12

liable for their role in that retaliation. We disapprove***637*1174http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=7047&FindType=Y&SerialNum=2010688808Taylor v. City of Los Angeles Dept. of Water & Power, supra, 144 Cal.App.4th 1216, 51 Cal.Rptr.3d 206, and Walrath v. Sprinkel, supra, 99 Cal.App.4th 1237, 121 Cal.Rptr.2d 806, to the extent they are inconsistent with this conclusion.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

WE CONCUR: GEORGE, C.J., BAXTER and CORRIGAN, J.

WERDEGAR, J., dissenting.
I fully agree with Justice Moreno's dissenting opinion, which I have signed. I write separately to emphasize both its conclusion and my disagreement with the majority.

By enacting the California Fair Employment and Housing Act (FEHA) ( Gov.Code, § 12900 et seq.) [FN1] in general, and section 12940 in particular, the elected branch of our state government has attempted to respond to one of our society's social ills: discrimination, harassment and retaliation in the workplace on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation."(§ 12940, subd. (a).) Our role as a court is to construe the statutes thus enacted, giving the statutory language its plain and commonsense meaning so as to effectuate and implement the intent of the Legislature.

        FN1. All statutory references are to the Government Code.

We have strayed far from this duty today. In analyzing the FEHA, the majority finely parses the statutory language and engages in intricate deductions of legislative intent. In so doing, the majority has lost sight of both our proper role and the basic meaning of the FEHA.

Section 12940, subdivision (h) provides that it shall be an unlawful employment practice "[f]or any ... person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices**244 forbidden [by the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]." (Italics added.) The language seems clear enough, as the jury found below. The Court of Appeal agreed, as has every court before today to have considered the question. If, as here, a person (such as defendant Weiss) retaliates against another (such as plaintiff Jones) because he has filed a complaint about harassment in the workplace, the person who engages in  *1175 retaliation commits an unlawful employment practice and is subject to the legal remedies set forth in the FEHA. In this simple way, our Legislature has chosen to make costly the discrimination against and harassment of employees on the basis of race and gender and the other enumerated statutory grounds, evidently concluding that the high cost visited on such unlawful behavior will dissuade people from engaging in it and employers from tolerating it.

The majority undertakes a series of analytical contortions to reach its conclusion that the phrase "any ... person" in section 12940, subdivision (h) does not render liable a supervisor who retaliates against an employee if the employee exercises his or her right to complain of unlawful workplace harassment. Not only do I agree with Justice Moreno's refutation of the majority's tortured reasoning, I also find the majority undermines the entire purpose of the FEHA. Whether personal liability in these circumstances is more or less efficacious in reducing or eliminating ***638 workplace discrimination is not for this court to say. To conclude that the FEHA plainly authorizes such personal liability is enough.

To the extent the majority holds otherwise, it is incorrect. To the extent it relies on its view of policy (see, e.g., maj. opn., ante, 72 Cal.Rptr.3d at p. 631, 177 P.3d at pp. 238-239), the majority departs from our role as a court. Accordingly, I join my dissenting colleagues in commending the Legislature's attention to this area of the law.

MORENO, J., dissenting.
Plaintiff Scott Jones alleged that his supervisor, defendant Jean Weiss, subjected him to sexual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232

Page 13

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P 43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101

**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

orientation harassment and also sexually harassed female employees. Plaintiff further alleged that Weiss retaliated against him when he complained about the harassment to Weiss, to Weiss's supervisor, and, ultimately, to the Department of Fair Employment and Housing (DFEH). It is well settled that Weiss can be held individually liable for harassment under Government Code section 12940, subdivision (j)(3), part of the Fair Employment and Housing Act (FEHA) (Gov.Code, § 12900 et seq.).[FN1] This case asks us to decide whether, under section 12940, subdivision (h), which forbids retaliation by "any employer, labor organization, employment agency, *or person* " (italics added), Weiss may be held individually liable for his retaliation as well.

> FN1. All further unlabeled statutory references are to the Government Code.

I conclude, as has every other state and federal published opinion to have considered the issue, that the language of section 12940, subdivision (h) unambiguously imposes individual liability on any "person" who retaliates. I presume that the Legislature meant what it said *1176(*People v. Snook* (1997) 16 Cal.4th 1210, 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808) when it added the word "person" to the FEHA's retaliation provision (Stats.1987, ch. 605, § 1, p.1942). Just as subdivision (h) unquestionably imposes liability on an employer, labor organization, and employment agency that retaliates, subdivision (h) similarly imposes liability on a "person" who retaliates. Such an interpretation is consistent with established canons of statutory construction-when a statute's language is clear, our inquiry ends. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284.) While the majority may harbor doubts about the wisdom of imposing personal liability on individuals who retaliate (maj. opn., *ante*, 72 Cal.Rptr.3d at pp. 629-631, 177 P.3d at pp. 236-239), such policy concerns are properly directed at, and resolved by, the Legislature, not this court.

In rejecting the most commonsense reading of the statute, the majority ultimately **245 concludes that the word "person" in section 12940, subdivision (h), "incorporates" or refers back to other provisions of the statute that are aimed at actions a "person" takes. (Maj. opn., *ante*, 72 Cal.Rptr.3d at p. 628, 177 P.3d at p. 236; see § 12940, subds. (c) & (j).) However, as

explained below, the only reasonable conclusion that follows is that a supervisor who retaliates against an employee who opposes *that same supervisor's* harassment, as occurred in this case, may be held personally liable under subdivision (h). Because the Legislature has undisputedly provided for individual liability for harassment (§ 12940, subd. (j)(3)), it logically follows that, *at a minimum*, there must also be individual liability for any connected retaliation by the harasser. To hold otherwise would be incongruous indeed. The Legislature could not have intended to ***639 expose a supervisor to individual liability for harassing an employee on the one hand, while, on the other hand, shielding that supervisor from liability for retaliating against the employee for opposing that very same harassment. Yet that is precisely the effect of the majority's holding.

In my view, neither the statutory language, nor the legislative history, nor logic can bear the weight of the majority's reasoning. Its holding *incentivizes* supervisors who harass (and thus face the risk of personal liability (see § 12940, subd. (j)(3))) to also retaliate against employees who oppose the harassment in an effort to dissuade their victims from reporting the conduct-under the majority's view, the supervisor risks no additional liability for retaliating and might avoid liability for harassment as well, if he or she successfully "discourages" the employee from pursuing a claim. I cannot conclude the Legislature intended such a perverse and irrational result. I therefore dissent and urge the Legislature to clarify the circumstances under which individuals may be held personally liable for retaliation.

### *1177I. BACKGROUND

The majority omits any mention of the events leading up to the filing of this action. (Maj. opn., *ante*, 72 Cal.Rptr.3d at pp. 625-627, 177 P.3d at pp. 234-235.) Because I believe that the facts of this case provide an important context for understanding the legal issues and policy considerations, I begin by setting forth the relevant facts and procedural history.[FN2]

> FN2. The factual and procedural history is taken from the Court of Appeal's opinion.

### A. Facts

Defendant The Lodge at Torrey Pines Partnership

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 14

(The Lodge) was formed in 1995 to develop, own, and operate The Lodge at Torrey Pines (LTP), a hotel and restaurant adjacent to the Torrey Pines Golf Course in La Jolla, California.[FN3] The Lodge operated a restaurant at the LTP called The Grill. In 1995, plaintiff began working in a supervisory position at The Grill. In 1997 he was promoted to manager of the restaurant and then, in 2000, he was again promoted to the position of outlet manager, making him responsible for the restaurant, bar, catering and banquet events, and the beverage cart service to golfers on the golf course. That same year, The Lodge began major reconstruction of the LTP with the goal of creating a five-diamond hotel. The Grill remained open during the reconstruction even though the hotel was being demolished around it. In October 2000, The Lodge hired Weiss as the LTP's food and beverage director. At that time, plaintiff was in charge of The Grill and Ken Mullen was the chef in charge of the kitchen.

> FN3. The Lodge is affiliated with Evans Hotel Corporation (Evans Hotels), which owns or is involved in the operation of a number of hotels, including the LTP.

Plaintiff testified at trial that Weiss and kitchen manager Jerry Steen developed "a special bond of joke telling" that involved daily jokes and sexual comments about female employees and plaintiff. Weiss used the words "fucking," "tits," "bitch," "cocksucker," and "faggot" in jokes that plaintiff found highly offensive and degrading. In connection with a banquet function, Weiss said people like plaintiff are better at decorating and plaintiff "should be good at this kind of stuff." When plaintiff was not present, **246 Steen and Weiss said plaintiff had "to go home to fuck [his] bitch" or "[his] bitch needs [him] at home." Weiss and Steen aimed graphic "gay-bashing jokes" at plaintiff, and they kept written copies of the jokes in the bar next to The Grill.

***640 Several female employees who worked in the LTP's cart department complained to plaintiff that they felt uncomfortable around Weiss and Steen, particularly Weiss. The employees told plaintiff that Steen used offensive language, including calling them "bitch," and that Weiss leered at them. In early 2001, plaintiff complained to Weiss that Steen was aggressive and *1178 unprofessional in the workplace toward women. In February or March,

Weiss threatened to fire plaintiff if he "aired any dirty laundry"-i.e., spoke to the human resources department about anything that happened at the LTP's food and beverage department. In May 2001, plaintiff sent Weiss an interoffice memorandum, stating: "Please refrain from your unprofessional remarks." Plaintiff testified that his reference to "unprofessional remarks" included gay-bashing jokes and jokes about women. Weiss responded by bringing plaintiff into his (plaintiff's) office and ordering everyone else out, locking the door, sitting plaintiff down in a corner, and delivering a tirade, after which he (Weiss) crumpled up plaintiff's interoffice memorandum and threw it at him. Plaintiff felt physically intimidated by Weiss.

On June 4, 2001, Steen was promoted to the newly created position of food and beverage operations manager for The Grill and the LTP's golf course operations. On June 6, a female employee, Jayme Miller, told plaintiff she wanted to lodge a written complaint about the gay-bashing jokes she had heard Weiss and Steen tell about plaintiff and his partner. The next day, plaintiff met with Jim Fulks, the human resources director for Evans Hotels. During the meeting, which lasted over two hours, plaintiff complained about sexual orientation discrimination and harassment at the LTP and about the sexual harassment of his female coworkers. He also told Fulks about the vulgar language Weiss and Steen used in the workplace and that Miller would be filing a written complaint. Plaintiff became very emotionally upset and expressed the need to see a therapist for counseling. Fulks told plaintiff he (plaintiff) would have to ask Weiss's permission to seek counseling and suggested he quit his job because "things like this get worse." Fulks thought plaintiff was too upset to work, so he directed him to call Weiss and tell him he would not be able to come to work that day. When plaintiff returned to work the next day, however, he received an "Employee Warning Notice" for absenteeism from Weiss, stating: "You did not follow Evans Hotels' policy by failing to notify your manager at least two hours before your starting time. You called at 11:31 a.m. You were scheduled for 12:00 noon." Plaintiff had never received a written employee warning notice before. He immediately called Fulks and asked why he had been written up. Fulks said, "That's the policy."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 15

On June 16, 2001, Miller had a friend deliver a letter to Fulks. In that letter, Miller complained about Weiss's and Steen's treatment of plaintiff and expressed her view that they were blackballing him. Fulks met with Miller shortly after receiving the letter, and Miller elaborated on the gay-bashing comments that Weiss and Steen made against plaintiff.

In a memorandum dated June 11, Weiss summarized various concerns about plaintiff's performance as a manager. Weiss had never "written anybody up," so Fulks gave him the format he should use to document his *1179 dissatisfaction with plaintiff's work performance. Weiss's memorandum discussed plaintiff's unsatisfactory performance in various areas and directed plaintiff to correct the issues within 30 days. The memorandum warned that " recurring performance problems may require further disciplinary action, which ***641 could lead to suspension and/or termination of employment at Evans Hotels."

Plaintiff received a memorandum dated June 15, 2001, requesting him to meet with Weiss and Fulks on June 18 at the human resources department. Plaintiff was happy when he received the memorandum because he thought something was finally going to be done about the issues he had raised in his meeting with Fulks. However, when he arrived at the meeting, Fulks gave him Weiss's **247 June 11 memorandum and made it clear they would only discuss the work performance issues raised in that document. Plaintiff was shocked to receive the memorandum, which he viewed as a "30-day notice for poor work performance"-i.e., a 30-day notice to comply with the directives of the memorandum or be terminated. Fulks told him they would meet after 30 days to discuss his progress. Although plaintiff testified he "did not believe a single word on this memorandum," he did not prepare a written response.

After plaintiff's June 18 meeting with Weiss and Fulks, Weiss stopped talking to him and excluded him from the LTP weekly management meetings, which he formerly had attended. On June 19, Weiss and Steen continued to use offensive language in the workplace and plaintiff overheard Steen threaten to "punch the faggot in the mouth." Plaintiff complained to Fulks about Steen's threat. Fulks said he would talk to Weiss, but plaintiff never heard back

from Fulks on the matter.

On July 19, 2001, plaintiff's doctor put him on disability leave until August 13 for "on-the-job harassment." Plaintiff's doctor later extended the leave to September 5. While plaintiff was on leave, Fulks instructed Dan Ferbal, the corporate director of training for Evans Hotels, to take plaintiff out to lunch to see how he was doing and to discuss his return to work. At Fulks's request, Ferbal proposed plaintiff transfer from his management position at the LTP to a supervisory position at another Evans Hotels property. Plaintiff told Ferbal he wanted to return to his job at the LTP and would not take a demotion.

When plaintiff's disability leave expired, Fulks placed him on paid administrative leave because the issue of where he would return to work was still unresolved. Fulks and Bill Evans, who was managing director of Evans Hotels and a general partner of The Lodge, tried to persuade plaintiff to take a position at the other property, but plaintiff adamantly refused to transfer from his position at the LTP. Plaintiff later met with Fulks and Dan Fullen, the general manager of the LTP. They told him he could return to the LTP but *1180 he would have to take care of the performance issues raised by Weiss. Plaintiff testified they told him he was still on his 30-day probation and that the way he suddenly went on disability leave had "burn[ed] a bridge" with the LTP's management. Plaintiff also testified that when he mentioned he had met with somebody in the DFEH, Fulks accused him of "blackmailing" the hotel and offered him $10,000 to drop his DFEH case. On September 25 the DFEH sent Fulks a "Notice of Filing of Discrimination Complaint" and a copy of the complaint plaintiff had filed with the DFEH the day before.

On September 28, plaintiff returned to work at the LTP as manager of The Grill. He continued to be excluded from meetings and Mullen advised him to watch his back because Weiss was "looking out to get dirt on [him]." Mullen testified that during a meeting sometime in the fall of 2001, Weiss said: "We've got to get Scott Jones out of here."

In October, plaintiff filed an amended DFEH complaint. In November, he was excluded from a "coordination meeting" of Evans Hotels management employees regarding***642 the upcoming Buick

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                                      Page 16
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

Invitational golf tournament. He had previously been included in Buick Invitational coordination meetings and his assistant was included in the November 2001 meeting. When plaintiff asked Fulks why he was excluded from the meeting and his assistant was allowed to attend, Fulks replied: "Because that's what you wanted. That's who [Weiss] is working with."

Between December 28, 2001, and January 17, 2002, Weiss issued four different employee warning notices to plaintiff. The first notice was for missing work without notifying Weiss and the other three were for alleged violations of "standard operating procedures." Plaintiff responded in writing to the first three notices, complaining that they had been issued for things that had never previously been a problem. Plaintiff did not respond to the last notice because he was "fed up."

On January 22, 2002, plaintiff submitted a letter of resignation, giving two weeks' notice. On January 24, Fulks hand-delivered **248 plaintiff's final paycheck and a letter responding to plaintiff's resignation letter, telling plaintiff it was "time to go home" because his service was no longer needed. In his letter, Fulks referred to plaintiff's "performance issues" and concluded with the statement: "I feel compelled to reiterate that your reasons and circumstances for leaving the Company should not be shared with other staff members of Evans Hotels in the interest of maintaining your confidentiality." On January 25, Ferbal documented a conversation he had had that day with plaintiff. Plaintiff told Ferbal he was glad to be out of the LTP and that he had "had it" with the extreme harassment he had endured from Weiss. Ferbal reported: "[Plaintiff] was extremely upset with the warnings he had just received over *1181 the past few weeks. Stupid stuff." Plaintiff told Ferbal that he had thoroughly enjoyed working for Evans Hotels, but he was sick of the abuse and wanted to feel better, and that he was worried about his health, which was his first priority.

## B. Procedural History

The procedural history of this case is somewhat complicated. As relevant here, plaintiff sued The Lodge asserting causes of action for (1) wrongful constructive discharge in violation of public policy, (2) sexual orientation harassment, (3) sexual orientation discrimination, (4) retaliation, (5) breach

of implied contract for continued employment, and (6) intentional infliction of emotional distress. Plaintiff also sued Steen and Weiss individually under the second, fourth, and sixth causes of action.

The trial court ultimately granted The Lodge's motion for summary adjudication as to plaintiff's first, second, fifth, and sixth causes of action, leaving only the sexual orientation discrimination and retaliation claims. The trial court granted Steen's motion for summary adjudication as to all of the claims against him and entered judgment in his favor. The trial court granted Weiss's motion for summary adjudication as to the second and sixth cause of action against him, leaving only the retaliation claim.

The remaining causes of action were tried to a jury, which returned a verdict in plaintiff's favor on all of the claims against defendants. The jury awarded compensatory damages of $1,395,000 against The Lodge and $155,000 against Weiss. The court entered judgment on the verdict.

The Lodge and Weiss filed separate motions for judgment notwithstanding the verdict and, alternatively, a new trial. On April 22, 2005, the court granted the motions for judgment notwithstanding the verdict, concluding plaintiff had to establish***643 an adverse employment action had been taken against him to succeed on both his discrimination and retaliation causes of action and there was insufficient evidence of an adverse employment action. With respect to Weiss, the court ruled an individual cannot be liable for retaliation. The court also granted the alternative motions for new trial. On May 9, 2005, the court entered a judgment in favor of The Lodge and Weiss.

After plaintiff appealed, the Court of Appeal unanimously reversed. With respect to the question of whether Weiss could be held individually liable for retaliation, the court primarily relied on the plain language of the retaliation provision (§ 12940, subd. (h)). We granted review to determine whether an individual may be held personally liable for retaliation.

## *1182 II. DISCUSSION

In determining whether the Legislature intended to impose individual liability for retaliation, it is well

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                 Page 17
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

settled that we must begin with the statutory language because it "generally provide[s] the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871, 39 Cal.Rptr.2d 824, 891 P.2d 804.) If the words are unambiguous, "we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook, supra,* 16 Cal.4th at p. 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808.) Only when the statutory language is susceptible of more than one *reasonable* interpretation may the court turn to extrinsic aids, such as legislative history or public policy, to assist in interpreting the statute. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94, 86 Cal.Rptr.2d 893, 980 P.2d 441.)

**\*\*249** The pertinent language of section 12940, subdivision (h) makes it an unlawful employment practice for "any employer, labor organization, employment agency, *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Italics added.) On two previous occasions, this court has considered whether other subdivisions of section 12940, which use somewhat different language, impose individual liability. (See *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083(*Carrisales*) [harassment]; *Reno v. Baird* (1998) 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333(*Reno* ) [discrimination].) In both cases, this court concluded that the subdivisions did not do so. However, as our holdings were predicated on statutory language not present in the retaliation provision at issue here, neither case is particularly helpful.

**A. Our Prior Section 12940 Decisions Are Inapplicable to This Case**

In *Reno, supra,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, we considered whether section 12940, subdivision (a), which makes it unlawful for an "employer" to discriminate against employees, allows supervisors to be held personally liable for acts of discrimination. The plaintiff in *Reno* sued her employer and her supervisor, alleging that both had discriminated against her based on her medical condition in violation of the FEHA. (*Reno, supra,* 18 Cal.4th at p. 643, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Although subdivision (a) prohibits only an

"employer" from engaging in improper discrimination, the plaintiff argued that her supervisor could nonetheless be held individually liable, relying on section 12926, subdivision (d), which defines "employer" as including "any person acting as an agent of an employer, directly or indirectly ...." (§ 12926, subd. (d); \*\*\*644*Reno, supra,* 18 Cal.4th at pp. 644-645, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) The plaintiff accordingly reasoned that the Legislature intended that supervisors be held individually liable because supervisors, \*1183 acting as employers' agents, fit within the definition of "employer." (*Reno, supra,* 18 Cal.4th at p. 647, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

We found section 12926, subdivision (d) to be ambiguous and amenable to two possible interpretations: either that (1) the Legislature intended to make every supervisor individually liable, as urged by the plaintiff, or (2) the Legislature merely intended to ensure that respondeat superior principles would apply by making employers liable for the actions of their supervisors, as urged by the defendant supervisor. (*Reno, supra,* 18 Cal.4th at p. 647, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) In adopting the latter construction, we cited with approval the holding and reasoning of *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741(*Janken* ).(*Reno, supra,* 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We primarily relied on the FEHA's differential treatment of harassment and discrimination as evidenced by the differing language the Legislature used in the respective subdivisions. (*Reno, supra,* 18 Cal.4th at p. 645, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We noted that "[a]lthough the FEHA prohibits harassment as well as discrimination, it treats them differently. It prohibits 'an employer ... or *any other person* ' from harassing an employee. (§ 12940, subd. (h)(1) [now subd. (j)(1) ], italics added.) ...The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination. (§ 12940, subd. (a).)" [FN4] (*Reno, supra,* 18 Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) We concluded that the Legislature, aware that different types of conduct gave rise to the different claims, "properly tailored the FEHA \*\*250 in order to address these distinct claims." (*Reno, supra,* 18 Cal.4th at p. 657, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

FN4. At the time of our decision in *Reno,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                                                                    Page 18
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

harassment was addressed in <u>section 12940</u>, former subdivision (h). Retaliation was addressed in former subdivision (f). Two Assembly bills amended the section effective January 1, 2001. (Assem. Bill No. 1856 (1999-2000 Reg. Sess.); Assem. Bill No. 2222 (1999-2000 Reg. Sess.).) The legislation added two new subdivisions and redesignated several former subdivisions. (Stats.2000, ch. 1047, § 1; *id.*, ch. 1049, §§ 7.5, 11.) Accordingly, former subdivision (h) (prohibiting harassment) is now subdivision (j), and former subdivision (f) (prohibiting retaliation) is now subdivision (h).

The majority in this case argues that our reasoning in <u>Reno</u> applies with equal force to retaliation claims under <u>section 12940</u>, subdivision (h). (Maj. opn., *ante*, 72 Cal.Rptr.3d at p. 628, 177 P.3d at p. 236.) But <u>Reno</u> is distinguishable for several reasons. First, the language of the retaliation provision at issue in this case (subd. (h)) is entirely unlike the language of the discrimination provision (subd. (a)) we considered in <u>Reno.</u> As discussed above, the FEHA's discrimination provision (subd. (a)) makes it an unlawful employment practice only when an "employer" discriminates. (<u>Reno, supra,</u> 18 Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) The FEHA's *retaliation* provision, on the other hand, makes it an unlawful employment practice for "any employer, labor organization, employment agency, *or person* " to retaliate. (Subd. (h), italics added.) I find unpersuasive the majority's assertion that the "language difference between <u>subdivisions (a) and (h) of section 12940</u> is not as great as initially appears" (maj. opn., *ante*, 72 Cal.Rptr.3d at p. 627, 177 P.3d at p. 235). The Legislature's decision to identify additional bad actors whose *1184 retaliatory conduct triggers liability is certainly significant,***645 yet the majority accords the Legislature's choice of words no weight.

Additionally, the majority's claim that any language difference between the two subdivisions is minimal is belied by <u>Reno.</u> In an opinion written by the author of the majority in this case, we *emphasized* differences between the language of the FEHA's discrimination and harassment provisions, the latter of which uses language nearly identical to the retaliation provision at issue here. (<u>Reno, supra,</u> 18 Cal.4th at p. 644, 76

Cal.Rptr.2d 499, 957 P.2d 1333.) Specifically, we noted that the FEHA "prohibits 'an employer ... or *any other person* ' from harassing an employee (§ <u>12940</u>, subd. [ (j)(1) ] )" (our italics) but "prohibits only 'an employer' from engaging in improper discrimination. (§ <u>12940</u>, subd. (a).)" (<u>Reno, supra,</u> 18 Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) I find it difficult to comprehend how linguistic differences we found significant in <u>Reno</u> could suddenly be of no interpretive import here.<sup>FN5</sup>

> FN5. Indeed, the <u>Janken</u> court (whose reasoning formed a substantial basis of our decision in <u>Reno, supra,</u> 18 Cal.4th at pages 645-663, 76 Cal.Rptr.2d 499, 957 P.2d 1333, and on which the majority here again relies (maj. opn., *ante*, 72 Cal.Rptr.3d at pp. 627-631, 177 P.3d at pp. 235-238)) found the linguistic difference between the FEHA's discrimination and harassment provisions to be of critical importance. (<u>Janken, supra,</u> 46 Cal.App.4th at p. 65, 53 Cal.Rptr.2d 741.) Focusing on the Legislature's use of the words "any other person" in the harassment provision (now § <u>12940</u>, subd. (j)(1)), <u>Janken</u> concluded that "the question of individual liability for harassment seems clearly answered in California." (<u>Janken, supra,</u> 46 Cal.App.4th at p. 67, fn. 19, 53 Cal.Rptr.2d 741.) As previously noted, identical phrasing appears in the retaliation provision. (§ <u>12940</u>, subd. (h).)

<u>Reno</u> is distinguishable for a second reason. In rejecting the plaintiff's argument that <u>section 12940</u>, subdivision (a) imposes individual liability because the word "employer" includes "any person acting as an agent of an employer" (§ 12926, subd. (d)), we concluded that the Legislature so defined "employer" to incorporate respondeat superior principles. (<u>Reno, supra,</u> 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Defendants argue that the Legislature may have had a similar purpose in adding the word "person" to the retaliation provision. Defendants' assertion cannot be correct. The FEHA's retaliation provision applies to "any *employer,* labor organization, employment agency, or person...." (Italics added.) Accordingly, it is the word "employer" in the provision that incorporates respondeat superior principles (see <u>Reno, supra,</u> 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                          Page 19
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

and ensures that an employer would be liable for its supervisors' retaliatory conduct. It would be odd indeed for the Legislature to have added the word "person" to the retaliation provision to serve a function identical to that of the word "employer." Such an interpretation is disfavored because it renders the word "person" surplusage. (*People v. Cole* (2006) 38 Cal.4th 964, 980-981, 44 Cal.Rptr.3d 261, 135 P.3d 669.) The presumption against surplusage applies with particular force when, *\*1185 as here, the language in \*\*251 question was added by amendment (Stats.1987, ch. 605, § 1, p.1942); such an interpretation would render the amendment unnecessary.

In relying on *Reno*, the majority also spends a great deal of time reiterating policy concerns that we first discussed in that case regarding the imposition of individual liability on supervisors. (Maj. opn., *ante*, 72 Cal.Rptr.3d at pp. 628-631, 177 P.3d at pp. 236-239.) Evaluating and resolving these concerns, however, is the province of the Legislature. Moreover, there is no reason to suppose that the \*\*\*646 Legislature was motivated by these concerns. Indeed, it may have reasonably believed that imposing individual liability would more effectively deter retaliation (ensuring employees would feel free to report unlawful employment actions without fear of retribution) and punish those who retaliate. Whatever the Legislature's motivation, if a statute's language clearly imposes individual liability, it is not for this court to second-guess the wisdom of the Legislature's policy choices. Accordingly, *Reno* does not support the claim that the word "person" in subdivision (h) does not impose individual liability.

In *Carrisales, supra,* 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083, we considered whether an employee could be held individually liable for harassment under section 12940. The plaintiff sued her employer, her supervisors, and a coworker for sexual harassment. (*Carrisales, supra,* 21 Cal.4th at p. 1134, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) Former subdivision (h) (now subdivision (j)) made it unlawful for "an employer ... or any other person" to harass an employee. As plaintiff does here, the plaintiff in *Carrisales* argued that the word "person" in the retaliation provision clearly demonstrated the Legislature's intent to impose individual liability on employees who harass. (*Carrisales, supra,* 21 Cal.4th at p. 1135, 90 Cal.Rptr.2d 804, 988 P.2d 1083.)

We disagreed. While we acknowledged that the provision was susceptible of such an interpretation, we emphasized the need to read the language in light of the statute as a whole. (*Carrisales, supra,* 21 Cal.4th at p. 1135, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) In deciding that the harassment provision did not impose individual liability, we specifically relied on the second sentence of former subdivision (h)(1), which provided that " '[h]arassment of an employee or applicant by an employee other than an agent or supervisor ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.' " (*Carrisales, supra,* 21 Cal.4th at p. 1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) Pursuant to that language, an unlawful employment practice occurred only when the *employer* (or its agents or supervisors) failed to immediately take appropriate corrective action in response to actual or constructive notice of harassment. (*Id.,* at pp. 1135-1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) We therefore reasoned the Legislature could only have intended for the employer to be held liable. (*Id.,* at p. 1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) The plaintiff's alternative interpretation would have meant that an employee's individual *\*1186 liability would turn on whether the employer took immediate and appropriate corrective action, an absurd result. (*Ibid.*)

After we decided *Carrisales,* the Legislature abrogated our holding. (See *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015.) As a result, the FEHA's harassment provision now provides that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (j)(3).) As we acknowledged in *McClung, supra,* 34 Cal.4th at page 471, 20 Cal.Rptr.3d 428, 99 P.3d 1015, in enacting subdivision (j)(3), the Legislature indisputably expressed its intent to impose individual liability on employees who harass.

Defendants argue here that, taken together, *Carrisales* and the subsequent legislative\*\*\*647

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Page 20

response stand for the proposition that the word "person" in a subdivision of the statute does not support imposing individual liability, but rather that such liability is only imposed **252 when the Legislature enacts language similar to that in section 12940, subdivision (j)(3).<sup>FN6</sup> DEFENDANTS INTERPRet *carrisales* and the implication of the Legislature's response too broadly. Our decision in *Carrisales* specifically rested on the second sentence in former subdivision (h)(1) (now subdivision (j)(1))- that sentence informed our understanding of the word " person" in the first sentence of the harassment provision. (*Carrisales, supra,* 21 Cal.4th at pp. 1135-1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) No such language appears in the retaliation provision. (See § 12940, subd. (h).) To the contrary, unlike the FEHA's harassment provision, subdivision (h) makes it clear that an unlawful employment practice occurs the moment a " person" retaliates against someone for opposing a forbidden practice. (*Ibid.*) Accordingly, as with *Reno*, *Carrisales* provides no support for the assertion that the Legislature did not intend for subdivision (h) to impose personal liability on individuals who retaliate.

> FN6. Similarly, the majority points to section 12940, subdivision (j)(3) as an example of "clear language imposing personal liability on all employees...." (Maj. opn., *ante*, 72 Cal.Rptr.3d at p. 627, 177 P.3d at p. 235.) While the Legislature did abrogate *Carrisales* in unmistakably clear language, this does not mean that anything short of subdivision (j)(3)'s language cannot express the Legislature's intent to impose such liability. When the Legislature provides, as it does in a great number of statutes, that it is unlawful for X to do Y, it typically means that, having done Y, X has violated the law and may be sued for doing so. The majority has identified no persuasive rationale to treat this statute any differently, let alone a rationale grounded in statutory language or the legislative history.

**B. Interpretation of "Person" in the Retaliation Provision**

Having concluded that neither *Reno* nor *Carrisales* is dispositive of the issue presented here, I next consider whether the word "person" in *1187section

12940, subdivision (h) is susceptible of more than one *reasonable* interpretation such that we should resort to extrinsic sources to assist in determining the Legislature's intent. (*People v. Jefferson, supra,* 21 Cal.4th at p. 94, 86 Cal.Rptr.2d 893, 980 P.2d 441.)

*1. Plain Language Interpretation*

Plaintiff urges the court to adopt a plain and commonsense interpretation of the retaliation provision. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.) Plaintiff argues that, by making it unlawful for a "person" to retaliate (§ 12940, subd. (h)), the Legislature clearly expressed its intent to impose liability on any individual who retaliates.<sup>FN7</sup> Such an interpretation has proved persuasive-every published state and federal opinion to have considered this issue has, as the Court of Appeal did in this case, adopted the interpretation advanced by plaintiff.<sup>FN8</sup> Indeed, the majority, ***648 conceding that the statutory language is susceptible of such an interpretation (maj. opn., *ante,* 72 Cal.Rptr.3d at p. 627, 177 P.3d at p. 235; see *Carrisales, supra,* 21 Cal.4th at p. 1135, 90 Cal.Rptr.2d 804, 988 P.2d 1083 [regarding nearly identical statutory language] ), does not cite a single case reaching a contrary conclusion.

> FN7. The FEHA defines "person" as including "one or more individuals ...." (§ 12925, subd. (d).)

> FN8. (E.g., *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1236-1237, 51 Cal.Rptr.3d 206;*Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1240-1242, 121 Cal.Rptr.2d 806;*Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 37 Cal.Rptr.2d 529;*Winarto v. Toshiba America Electronics Components* (9th Cir.2001) 274 F.3d 1276, 1288;*Peterson v. Santa Clara Valley Medical Center* (N.D.Cal., Jan. 7, 2000, No. C 98-20367) 2000 WL 98262;*Soo v. United Parcel Service, Inc.* (N.D.Cal.1999) 73 F.Supp.2d 1126;*Liberto-Blanck v. City of Arroyo Grande* (C.D.Cal.1999) 33 F.Supp.2d 1241;*Kaminski v. Target Stores* (N.D.Cal., Sept. 4, 1998, No. C98-2271) 1998 WL 575097.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                    Page 21
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

Plaintiff's argument has substantial merit, especially when one compares section 12940, subdivision (h) with the provisions we considered in *Reno* and *Carrisales.* Unlike the discrimination provision (subd. (a)) in *Reno,* which applies only to employers, the Legislature chose to include "person" as one of the entities in the retaliation provision whose conduct would trigger liability.[FN9] Unlike the **253 harassment provision in *Carrisales* (subd. (j)), which made harassment an unlawful employment practice only when an employer fails to take corrective action, the Legislature has made clear in subdivision (h) that an unlawful employment practice takes place when a "person" retaliates. In light of these linguistic differences between the retaliation provision on the one hand, and the discrimination and harassment provisions on the other, the *1188 ordinary, everyday meaning of the statutory language appears to impose personal liability on any individual who retaliates. (See *Merrill v. Dept. of Motor Vehicles* (1969) 71 Cal.2d 907, 918, 80 Cal.Rptr. 89, 458 P.2d 33.)

> FN9. Indeed, in deciding that subdivision (h) does not impose liability on a "person" who retaliates, the majority treats the word "person" in a unique manner. There is no doubt that the other entities identified in subdivision (h)-an employer, labor organization, or employment agency-may be sued for their retaliatory conduct. Treating one of the identified entities in a manner different from the others is odd, absent a principled basis for doing so, since the language of the subdivision appears to similarly situate the listed entities.

### 2. "Incorporation" Interpretation

Notwithstanding canons of statutory construction which counsel us to follow the traditional and plain meaning of a statute's words (*Mercer v. Dept. of Motor Vehicles* (1991) 53 Cal.3d 753, 763, 280 Cal.Rptr. 745, 809 P.2d 404), the majority identifies, and ultimately adopts, a different interpretation-that the Legislature's use of the word "person" in section 12940, subdivision (h) was intended to "incorporate" other provisions of the statute that are aimed at actions a "person" takes.[FN10] (Maj. opn., *ante,* 72 Cal.Rptr.3d at p. 638, 177 P.3d at p. 236.) While the majority does not specify to which provisions of section 12940 it is referring, subdivisions (c) and (j)

both apply to actions a "person" takes: subdivision (c) makes it unlawful "[f]or any person to discriminate ... in the selection or training of [a] person in any apprenticeship training program ..." and subdivision (j)(1) makes it unlawful for "an employer, labor organization, employment agency, ... or any other person" to harass. (See also *id.,* subd. (i).)

> FN10. As discussed above (see *ante,* 72 Cal.Rptr.3d at pp. 632-633, 177 P.3d at p. 240), defendants argue the Legislature could also have added the word "person" to ensure that an employer would be liable for its supervisors' retaliatory actions. The majority does not address this theory and it is easily dismissed. The Legislature having already incorporated respondeat superior principles via the use of the word "employer" in section 12940, subdivision (h) (see *Reno, supra,* 18 Cal.4th at pp. 644-645, 76 Cal.Rptr.2d 499, 957 P.2d 1333; § 12926, subd. (d)), defendants would have us conclude the Legislature chose to do so *again* by adding the word "person" as well. This interpretation is not plausible.

Concluding that the word "person" was added to section 12940, subdivision (h) "to *incorporate* other unlawful employment ***649 practices defined in other parts of section 12940..." (maj. opn., *ante,* 72 Cal.Rptr.3d at p. 628, 177 P.3d at p. 236, italics added), the majority fails to explain the implication of this "incorporation." In light of its ultimate conclusion that subdivision (h) does not impose individual liability, the majority could only have two possible implications in mind: either (1) the Legislature's addition of the word "person" to subdivision (h) provided certain victims of retaliation with a remedy that did not previously exist, because the word "person" appeared in other subdivisions (e.g., subd. (c)), but did not appear in the retaliation provision, or (2) the word "person" was added to subdivision (h) for purely cosmetic reasons. Neither is plausible.

With regard to the first possible implication, before the Legislature added the word "person" to the retaliation provision (Stats.1987, ch. 605, § 1, p. 1942), it was unlawful for "any employer, labor organization, or employment agency" to retaliate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232                                                                                                              Page 22
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

"against any person because the person has opposed *1189*any practices forbidden under this part...."* (§ 12940, former subd. (f), italics added; Stats.1985, ch. 1151, § 2, p. 3893.) One could claim that, prior to the addition of the word "person" to the retaliation provision, an individual who was discriminated against under subdivision (c) (apprenticeship training program), and was subsequently retaliated against for complaining, could not sue for retaliation. Any such claim is demonstrably false. Even if the list of entities at which the retaliation provision were aimed did not include the word "person," there could be no doubt that a person retaliated against for opposing a violation of subdivision (c) (a "practice [ ] forbidden under this part" [subd.**254** (h) ] ) could sue the discriminator's employer for retaliation committed by the employer *or by* " any person acting as an agent of the employer" (§ 12926, subd. (d); see *Reno, supra,* 18 Cal.4th at p. 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333). Therefore, it cannot be that the Legislature added the word "person" to subdivision (h) so that those retaliated against for opposing violations of subdivision (c) (or subdivision (j) [harassment] ) would have a remedy.

The second possible implication, and the one the majority appears to have endorsed, is that the Legislature added the word "person" to section 12940, subdivision (h) for *no* reason at all, or for purely cosmetic purposes. Under this interpretation, both before and after the word "person" was added to subdivision (h), a person retaliated against for opposing *any* practice forbidden under section 12940 could sue. Additionally, according to the majority, both before and after the word was added, subdivision (h) imposed no personal liability on individuals who retaliate. The addition of the word "person" to subdivision (h), in the majority's estimation, appears to have worked no change at all. Such a conclusion is dubious, particularly because, as previously noted, it renders the word "person," and the amendment that added it, surplusage.

If these were the only two possible implications of this interpretation, I would conclude that the majority had not identified a reasonable alternative to a plain reading of the statutory language. But there is one other possible implication of this interpretation: the word "person" might have been added to subdivision (h) to point back to, or incorporate, other provisions aimed at actions a "person" takes, and in so doing,

incorporated the level of liability existing in the underlying provision. This interpretation would impose personal liability on an individual who retaliated against a person who complained of an unlawful employment practice that itself provides for individual liability.

***650** Subdivision (c) illustrates this point. In that provision, the Legislature has made it unlawful for a "person" (and *only* a "person") to discriminate in the selection or training of a person in any apprenticeship training program. (§ 12940, subd. (c).) It would be difficult to interpret subdivision (c) to allow *1190* suit against anyone *other* than the offending "person"-the subdivision does not identify anyone else the victim can sue other than the "person" who discriminated. If the offending "person" then retaliates against the victim for opposing the discrimination, the victim has suffered an independently actionable wrong and may now assert a retaliation claim under subdivision (h). As above, it would be difficult to say that subdivision (h) does not allow suit against that very same person for retaliating against the victim for opposing misconduct under subdivision (c). Accordingly, under the only reasonable implication of the majority's "incorporation" interpretation, subdivision (h) *does* impose individual liability, at least against a "person" who retaliates against someone who opposes a violation of subdivision (c).

This reasoning applies with equal force to retaliation against a person who opposed the retaliator's own harassment. As previously set forth, under subdivision (j)(1), it is unlawful for "an employer ... or any other person" to harass an employee. In response to our decision in *Carrisales,* the Legislature enacted subdivision (j)(3), making clear that harassers are individually liable. As above with subdivision (c), if a supervisor may be held individually liable for harassment under subdivision (j), it logically follows that the word "person" in subdivision (h) permits suit against that very same supervisor for retaliating against an employee who opposes the supervisor's own harassment.

That is precisely what transpired here. Plaintiff alleged that Weiss harassed him on the basis of his sexual orientation and sexually harassed female employees as well. Plaintiff complained to Weiss, asking him to stop. After Weiss ignored plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**
Page 23

entreaties, plaintiff complained to the human resources director and, ultimately, filed a charge with the DFEH. Plaintiff further alleged that, in response to his efforts to oppose *Weiss's* harassment of women and of plaintiff, *Weiss* then retaliated against him.[FN11] No one disputes**255 that, under subdivision (j)(3), Weiss can be held individually liable for his harassment.[FN12] Accordingly, while an "incorporation" interpretation may be a reasonable alternative to a plain reading of the statutory language, the only plausible implication of such an interpretation is that *1191 subdivision (h) imposes personal liability on Weiss for ***651 retaliating against plaintiff for opposing Weiss's own harassment.[FN13]

FN11. The jury obviously was persuaded that Weiss retaliated. It returned a verdict in plaintiff's favor on his retaliation claim against Weiss, awarding $155,000 in compensatory damages against Weiss.

FN12. I acknowledge that the trial court granted Weiss's motion for summary judgment on plaintiff's harassment claim. However, contrary to the majority's assertion (maj. opn., *ante,* 72 Cal.Rptr.3d at p. 631, fn. 4, 177 P.3d at p. 239, fn. 4), this does not alter the analysis. It is well established that retaliation is an independently actionable claim that does not require that a plaintiff prevail on the underlying unlawful employment action so long as the plaintiff has a reasonable, good faith belief he or she was opposing an unlawful employment action. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)Given the facts recited by the Court of Appeal, one would be hard pressed to conclude plaintiff had no such good faith belief that Weiss was engaging in unlawful harassment. Indeed, notwithstanding its granting of the summary judgment motion, the trial court instructed the jury that they could find that Weiss retaliated against plaintiff because plaintiff opposed unlawful harassment.

FN13. Although I believe that examining policy considerations is only warranted

when the statutory language does not clearly resolve the issue (see *ante,* 72 Cal.Rptr.3d at p. 633, 177 P.3d at p. 240), I do note that this "incorporation" interpretation would minimize many of the policy concerns focused on by the majority. (See maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 629-631, 177 P.3d at pp. 236-239.) Under this interpretation, a supervisor could only be held individually liable for retaliation if he or she was motivated by an individual's opposition to that supervisor's harassment. As the majority notes, " ' "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." ' " (Maj. opn., *ante,* 72 Cal.Rptr.3d at p. 629, 177 P.3d at pp. 236-237, quoting *Reno, supra,* 18 Cal.4th at pp. 645-646, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

*3. Resorting to Extrinsic Sources to Resolve the Legislature's Intent*

The language of subdivision (h) is susceptible of two reasonable interpretations-either that the word "person" imposes personal liability on *any* individual who retaliates or that it points back to other subdivisions aimed at actions a "person" takes, incorporating the level of liability available in those provisions. Both of these interpretations would result in personal liability under the facts of this case. To resolve which interpretation more likely comports with the Legislature's intent, I consider extrinsic sources.

I begin with the legislative history of the bill adding the word "person" to subdivision (h). As the majority explains, the word "person" was added to the retaliation provision in 1987, effective January 1, 1988 (Stats.1987, ch. 605, § 1, p.1942), with the enactment of Assembly Bill No. 1167 (1987-1988 Reg. Sess.). (Maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 632-633, 177 P.3d at p. 240.) The bill was introduced on March 3, 1987, by Assemblymember Bill Bradley on behalf of the DFEH and the Fair Employment and Housing Commission (FEHC), which were involved in drafting and developing the bill.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232

42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
**(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)**

Page 24

As the majority further recounts, almost none of the legislative history specifically addresses the addition of the word "person" to the retaliation provision. (Maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 632-634, 177 P.3d at pp. 240-241.) However, the one piece of legislative history that *does* specifically address the addition of the word "person" to the retaliation provision strongly suggests that it was added to create personal liability for anyone that retaliates. The staff of the DFEH and the FEHC prepared a summary of the proposed changes to the FEHA, *1192 including the addition of the word "person" to the retaliation provision.[FN14] The summary describes the proposed changes to the retaliation provision, and then states: "Rationale: [¶] The addition of the word 'person' is to conform with other sections of the Act which refer to unlawful conduct by a 'person'. More importantly, the change will *extend coverage to anyone who* **256 *retaliates* against an individual because that person filed a charge with DFEH. This will provide *more protection* to people exercising their lawful right to file with DFEH."(Italics added.)

> FN14. The summary was the first document in the legislative bill file of the Assembly Committee on Housing and Community Development, the policy committee to which Assembly Bill No. 1167 (1987-1988 Reg. Sess.) was referred.

The summary's statement that the addition of the word "person" to the retaliation provision would "*extend* coverage to *anyone* who retaliates" and "provide *more protection* " (italics added) clearly supports ***652 the plain language interpretation advanced by plaintiff, that any individual who retaliates may be held individually liable.[FN15] The majority, by contrast, focuses on the first sentence of the summary's rationale for the proposed changes, that the word "person" was added to "conform" to other subdivisions of section 12940 that refer to unlawful conduct committed by a "person." (Maj. opn., *ante,* 72 Cal.Rptr.3d at p. 636, 177 P.3d at p. 242.) Even if the majority's emphasis was correctly placed, that portion of the document still supports an interpretation resulting in individual liability for Weiss-that the word "person" was added to point back to uses of the word "person" in other subdivisions, thus incorporating the level of liability present in the underlying subdivision. What the summary's language does not support is the

majority's claim that the word "person" was added for no reason at all.

> FN15. Because the FEHC and the DFEH sponsored, developed, and helped to draft Assembly Bill No. 1167 (1987-1988 Reg. Sess.), we should accord their interpretation of the legislation significant respect. (See *Reimel v. Alcoholic Beverage Control Appeals Bd.* (1967) 254 Cal.App.2d 340, 345, 62 Cal.Rptr. 54.)

Discussing other legislative history documents related to Assembly Bill No. 1167 (1987-1988 Reg. Sess.), the majority emphasizes that a number of documents, including the Legislative Counsel's Digest, describe the changes the bill made as "technical and conforming." (Maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 632-636, 177 P.3d at pp. 240-242.) This general description of the bill's changes is less than enlightening. Moreover, as the majority concedes, none of the documents to which it refers specifically mentions the addition of the word "person" to the retaliation provision. (Maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 632-634, 177 P.3d at pp. 240-242.) Additionally, the notion that the changes were "conforming," if anything, provides further support for the interpretation that the word "person" in the retaliation provision was intended to incorporate, or refer back to, other subdivisions aimed at unlawful conduct committed by a "person"-an interpretation that, as explained above, results in individual liability under the facts of this case.

*1193 In addition to the legislative history of Assembly Bill No. 1167 (1987-1988 Reg. Sess.), plaintiff also relies on the legislative history of Assembly Bill No. 1856 (1999-2000 Reg. Sess.), the bill abrogating our holding in *Carrisales.* An enrolled bill report prepared by the DFEH said that "[e]xisting law provides that when a person retaliates against another person for opposing practices forbidden by the FEHA ... a complaint may be filed against any employer, labor organization, employment agency, or person." (DFEH, Enrolled Bill Rep. on Assem. Bill No. 1856 (1999-2000 Reg. Sess.) Sept. 11, 2000, p. 3.) While the majority correctly notes that a statement made in 2000 about a statute enacted in 1987 is neither binding nor conclusive in construing that statute (maj. opn., *ante,* 72 Cal.Rptr.3d at pp. 634-635, 177 P.3d at pp. 241-242), we have previously

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

177 P.3d 232
Page 25
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P
43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101
(Cite as: 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624)

acknowledged that "the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244, 62 Cal.Rptr.2d 243, 933 P.2d 507.)

Moreover, the DFEH's enrolled bill report is particularly persuasive in light of section 12960, which sets forth the procedure for an aggrieved party to follow in filing a complaint regarding unlawful employment practices forbidden under section 12940. Section 12960, subdivision (b) provides that "[a]ny person claiming to be ***653 aggrieved by an alleged unlawful practice may file ... a verified complaint, in writing, that shall state the name and address of *the person,* employer, labor organization, or employment agency alleged to have committed the unlawful practice**257 complained of...." FN16 (italics added.) IT WOULD BE ODD FOR THE LEGislature to have provided that an alleged victim could file a complaint against a person, if the Legislature did not intend for the person to be held personally liable.

> FN16. Section 12960 was derived from Labor Code former section 1422. (Stats.1959, ch. 121, § 1, p. 2003.)

A more plausible theory is that the Legislature adopted language in section 12960 to permit a filing of a complaint against each of the entities that may be held liable for violations of section 12940: any employer, labor organization, employment agency, or *person.* That the language of section 12960 essentially tracks the language of the retaliation provision only bolsters the plain language reading of section 12940, subdivision (h). It is difficult to reconcile the language of section 12960, which was added to the Government Code in 1980 (Stats.1980, ch. 992, § 4, p. 3155), with the majority's interpretation that section 12940 provides for no individual liability with the exception of the harassment provision, which was amended to add such liability in 2001. If the majority is correct, it is hard to comprehend why the Legislature would have allowed, long before it abrogated our decision in *Carrisales,* individuals to be named in complaints for violating section 12940 provisions.

*1194 In light of the legislative history, the statutory context in which section 12940, subdivision (h) is

placed, and well established canons of statutory interpretation that counsel us to adopt the plain and commonsense meaning of the words the Legislature has employed, I conclude that the Legislature intended the word "person" in subdivision (h) to mean that any individual who retaliates may be held personally liable. Even if this interpretation were incorrect, the only other plausible interpretation of the statutory language would similarly result in imposing personal liability under the facts of this case. What cannot be supported is the notion that the Legislature intended for no individual liability to be available under any circumstances. Accordingly, I dissent. Fortunately, the majority's adoption of an interpretation of the statute that has no support in its language or legislative history is not the final word on the meaning of the statute. The Legislature can, and should, clarify that meaning.

WE CONCUR: KENNARD and WERDEGAR, JJ.
Cal.,2008.
Jones v. Lodge at Torrey Pines Partnership
42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624, 102 Fair Empl.Prac.Cas. (BNA) 1516, 90 Empl. Prac. Dec. P 43,123, 08 Cal. Daily Op. Serv. 2511, 2008 Daily Journal D.A.R. 3101

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):<br>David S. Secrest, Esq. [State Bar #142299]<br>Law Offices of David S. Secrest, A Professional Corporation<br>504 Plaza Alhambra, Suite 205, P. O. Box 1029<br>El Granada, CA 94018-1029 | TELEPHONE NO.:<br>650-726-7461 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR (Name): Plaintiff Timothy Sanocki

Insert name of court and name of judicial district and branch court, if any:
San Francisco Sup. Ct., Civic Center Courthouse



**F I L E D**
San Francisco County Superior Court

DEC 1 9 2007

GORDON PARK-LI, Clerk
BY: _____
              Deputy Clerk

PLAINTIFF/PETITIONER: TIMOTHY SANOCKI

DEFENDANT/RESPONDENT: SERCO GROUP PLC, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>    ☐ Motor Vehicle   ☐ Other<br>☐ Family Law<br>☐ Eminent Domain<br>☑ Other (specify):  Employment- Wrongful Termination | CGC-07-465608 |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please dismiss this action as follows:
    a. (1) ☐ With prejudice   (2) ☑ Without prejudice
    b. (1) ☐ Complaint   (2) ☐ Petition
       (3) ☐ Cross-complaint filed by (name):                                    on (date):
       (4) ☐ Cross-complaint filed by (name):                                    on (date):
       (5) ☐ Entire action of all parties and all causes of action
       (6) ☑ Other (specify):*  Complaint, as against Individual Defendant Paul Carpmael ONLY

Date: December 18, 2007

David S. Secrest                                                                              **BY FAX**

(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
                                                                          (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.           Attorney or party without attorney for:
                                                                          ☑ Plaintiff/Petitioner        ☐ Defendant/Respondent
                                                                          ☐ Cross - complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**
    Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
                                                                          (SIGNATURE)
** If a cross-complaint or Response (Family Law) seeking affirmative
relief is on file, the attorney for cross-complainant (respondent) must
sign this consent if required by Code of Civil Procedure section 581 (i)     Attorney or party without attorney for:
or (j).                                                                   ☐ Plaintiff/Petitioner        ☐ Defendant/Respondent
                                                                          ☐ Cross - complainant

(To be completed by clerk)
3. ☐ Dismissal entered as requested on (date):
4. ☐ Dismissal entered on (date):                          as to only (name):
5. ☐ Dismissal not entered as requested for the following reasons (specify):

6. ☐ a. Attorney or party without attorney notified on (date):
       b. Attorney or party without attorney not notified. Filing party failed to provide
          ☐ a copy to conformed   ☐ means to return conformed copy
    Date: _____          Clerk, by _____, Deputy

Form Adopted for Mandatory use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]
REQUEST FOR DISMISSAL
Page 1 of 1
Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**PROOF OF SERVICE**

*Timothy Sanocki v. Serco Group PLC, et al., San Francisco Superior Court No. CGC-07-465608*

1    I, Kevin Murphy, declare:

2    I am over the age of 18 years and not a party to the within action. I am employed in the

3    County of San Mateo, State of California and my business address and place of business is 504

4    Plaza Alhambra, Suite 205, El Granada, CA 94018. On the date(s) entered below, I served the

5    following document(s):

6    REQUEST FOR DISMISSAL AS TO INDIVIDUAL DEFENDANT PAUL CARPMAEL, ONLY:

7    **XX**    **BY MAIL [CCP §§ 1013(a), 2015.5]:** On the date indicated below, I placed an accurate

8    copy of the foregoing document, addressed to the following party(ies) listed below or on

     the Service List, in a sealed envelope, and following ordinary business practices, placing

9    the envelope for mailing and collection in the Law Offices of David S. Secrest in the

     appropriate place for mail collected for deposit with the United States Postal Service in the

10   City of El Granada, California to:

11   **XX**    **VIA FACSIMILE [CCP §§1013(e), 2015.5, CRC 2008]:** On the date indicated below, I

12   transmitted by facsimile transmission from a facsimile transmission machine whose

     telephone number is (650) 726-7471 to the person(s) indicated below, or on the attached

13   Service List, whose facsimile transmission telephone number is indicated below, the

     aforementioned document(s) and an unsigned copy of this declaration. The above-

14   described transmission was reported as complete without error by a transmission report

     issued by the facsimile transmission machine upon which the said transmission was made

15   immediately following the transmission.

16

17   **Ann Marie Reding**
     **Seyfarth Shaw LLP**
18   **560 Mission Street, Suite 3100**
     **San Francisco, CA 94105-2930**
     **Fax: (415) 397-8549**

19

20   I declare under penalty of perjury in accordance with the laws of the State of California that

21   the foregoing is true and correct, and that this document was executed at El Granada, California,

     on December 19, 2007.

22

23                                    Kevin Murphy

24

25

26

27

28

Law Offices of
David S. Secrest
El Granada, CA